## Calvit's Ex'ors, Appellants, *v.* Markham *et al.*

Where an individual is a common partner in two concerns no engagement entered into, or debt incurred by one with the other, can be enforced at law; resort must be had to a court of chancery.

There is no necessity for an interlocutory decree to account, where the parties have made and agreed to a final settlement between themselves, unless there is a ground laid to surcharge and falsify the account.

A general charge of error in an account is not sufficient, some particular error must be specified as a ground to surcharge and falsify.

Where an agent was appointed by the parties to settle the accounts, and the settlement, although not final, was sufficient to establish the complainant's right to the sum sued for: *Held*, a final decree may be made, without taking an account between the parties, under an interlocutory order.

APPEAL from the superior court of chancery.

The appellees, James Cawden and Sarah Calvit, executor and executrix of the last will and testament of Samuel Calvit, deceased, filed their bill against William F. Markham, Peter G. Goosey and Christopher Dart, persons composing the firm of Wm. F. Markham & Co. They charge that their testator, on the 2d day of June, 1835, formed a patnership for the sale of merchandise, in the town of Petit Gulf, in this state, with Peter C. Goosey and Christopher Dart, under the firm and name of C. Dart & Co. That the same was dissolved, by mutual consent, in the spring of 1826. At the dissolution of the firm, Dart and Goosey were largely indebted to Samuel Calvit. Tacitus Calvit was appointed a mutual agent to settle the accounts and pay the debts of the partnership, and, 'on his decease, one James M. Smith was substituted in his place. There has never been a final settlement of the accounts between the members of said firm. About the month of October, 1825, the said Dart and Goosey formed another partnership, for the sale of merchandise, at the town of Fayette, in this state, with the said William F. Markham. Between the 20th of October, 1825, and the 1st of January, 1827, the latter firm became largely indebted to the

former; and on the 1st day of January, 1827, a final settlement was made between them, when it was found that Markham & Co. were indebted to C. Dart & Co., in the sum of 9134 dollars and 40 cents. This sum falls greatly short of the amount which would be found due to Samuel Calvit's representatives, upon a final settlement of the accounts of the firm of C. Dart & Co. The bill prays a decree that this sum may be paid to the complainants, or to J. M. Smith, the agent.

The answer of Markham admits most of the facts charged in the bill. He denies that the settlement referred to in the bill was final, and charges, in general terms, that some articles in the accounts were overcharged, and several credits omitted to which his firm was entitled. The answer of Goosey is the same, in substance, with that of Markham, and denies that he, as one of the members of the firm of C. Dart & Co., was indebted to the same. C. Dart made no answer, and there was a *pro confesso* decree against him.

The only witness whose testimony was taken and used in the cause, was J. M. Smith, the agent of C. Dart & Co. He proves that Samuel Calvit advanced to the firm of C. Dart & Co., out of his individual funds, between 8000 and 12,000 dollars. That Dart and Goosey advanced nothing. That the firm of C. Dart & Co. was insolvent, and that Samuel Calvit had paid, with his individual funds, the debts due against the same, and that the firm is insolvent precisely in the sum which it owes Calvit. That the amount due from the firm of Markham & Co., will not be sufficient to redeem the house of Dart & Co. from its insolvency. That he, as agent of the house of C. Dart & Co., made the settlement referred to in the bill, and after a week's laborious investigation, found the sum before stated to be due. That it was agreed that the same should be on interest from the 1st day of January, 1827. That this sum was reduced by payments to 8243 dollars and 8 cents, and that it should be on interest from the 1st of February, 1830. That Markham and Goosey agreed to execute a mortgage to secure the same, and refers to the power of attorney of Goosey to Markham, to execute the mortgage, and to Markham's letter on the same subject, and makes them a part of his deposition. On the — day of July, 1834, the

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

court made a final decree, directing the payment of the sum of 8243 dollars and 8 cents, with interest, to the complainants.

Guion and Prentiss, for the appellants.

Appellants take the following positions.

1. The bill presents no case upon which any decree can be predicated.

2. It was error to make a final decree without first taking an account between the two firms of C. Dart & Co., and Wm. F. Markham & Co.

3. It was error to take final decree without first taking an account between the members of the firm of C. Dart & Co.

4. It was error to base final decree upon the unsupported testimony of one witness.

5. There is error apparent on the face of the decree.

As to the first point, the bill prays no account, but simply a decree for a sum certain, due upon an account stated, which, so far, is not a subject of equity jurisdiction, but recoverable, if at all, at law only.    The equity of the bill, however, we suppose, rests upon the averment, that the debt is due to C. Dart & Co., but that in equity, Calvit, as one of the partners of that firm, is entitled to the whole of it.

But does the bill present such a case?    The bill does not aver that the firm of C. Dart & Co. is insolvent, but simply that on the dissolution thereof, Dart and Goosey were largely indebted to said Calvit; that no settlement has ever been made, or account taken between the partners of said firm; but that when such settlement shall take place, the said Dart and Goosey will be found indebted to the complainants, in an amount larger than the amount due from Markham & Co. to C. Dart & Co.

The indebtedness of Dart and Goosey to Calvit, is stated in the bill, to depend upon a final settlement or accounting between the members of the firm of C. Dart & Co.; and the bill further states, that such settling or accounting has never taken place. The debts due, at the time of dissolution, from Dart and Goosey, were due not to Calvit, but to C. Dart & Co.

But as the bill prays no account, but simply a decree for a sum

certain, it is manifest there is no case presented in the bill for equitable interference.

What is there in the bill to show that, upon a final settlement of the firm of C. Dart & Co., it will not turn out solvent? and if so, what right, either legal or equitable, has Calvit to more than his portion of the debt due from Wm. F. Markham & Co.?

As to the second point, though the bill avers an account stated, and a final settlement between the two firms, yet such final settlement is denied by both Markham and Goosey in their answer; and they both attack said account, and set forth the specific errors and mistakes in the same. The evidence of a final settlement or account stated, is not sufficient, as will be hereafter shown, to overturn the sworn answers of the defendants.

But even if the evidence of an account stated was sufficient, still the defendants, in their answers, set forth specific errors and mistakes therein, and were as much entitled to a decree for an account, as a complainant who attacks an account stated upon the same grounds. It is clear the court should have made an interlocutory decree, giving the defendants an opportunity, at any rate, of surcharging and falsifying said account.

As to the third point, the complainants' whole case rests on the indebtedness of Dart and Goosey as partners of the firm of C. Dart & Co., to Calvit, the other partner, upon settlement of an account to be taken between them; until such accounting, the court could not say that Dart and Goosey were indebted to Calvit, nor base a final decree upon such supposed indebtedness.

Again, where is the evidence of such indebtedness? Goosey denies it under oath, and avers that on final settlement C. Dart & Co. will be indebted to him.

There is the evidence of one witness on the subject, which, even admitting it to be true, does not prove that upon final settlement of the firm of C. Dart & Co., said Dart and Goosey will be indebted to the complainants one cent.

But even if said deposition was in point, it cannot prevail, being the testimony of a single witness against the positive denial of Goosey's answer.

As to the fourth point, there is the evidence of but one witness in

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

this case, to wit, James M. Smith.  Now before the complainants can be entitled to the debt due from Wm. F. Markham & Co., they surely must prove the averment of the bill, that, "upon final settlement of the affairs of C. Dart & Co., Goosey and Dart will be found indebted to Calvit, in a sum at least as great as the debt which they seek to recover."  This averment is the very gist of their action.  Without proving it, they have no shadow of claim to a recovery.  Is this averment proved?  The only evidence is that of Smith, and that too, of a secondary character. He only swears that it appears by the books of C. Dart & Co. in 1832, (many years after a dissolution of the firm, and many years after Goosey and Dart had any access to the books,) that Goosey and Dart were indebted to the firm in an amount greater than the debt due from Wm. F. Markham & Co.  Now, in the first place, this evidence should have been rejected as secondary, no excuse being shown for not producing them.  In the second place, what appeared in the books in 1832, so many years after the dissolution, and after Goosey and Dart had ceased to have access to them, was not legal evidence against them, unless the entries were first shown to have been in their handwriting, or at least to have been made during the existence of the partnership. But neither of these facts appear in the deposition of Smith, or otherwise.  Finally, Goosey positively denies any indebtedness to the firm of C. Dart & Co., but, on the contrary, claims to be himself a creditor of said firm.  Can the testimony of one witness, entirely unsupported by corroborating circumstances, prevail against this positive denial of the most material averment in the bill?  The rule of law is imperative, where the answer denies the material facts of the bill, a decree cannot be supported upon the testimony of a single witness.  1 Johns. Cha. Rep. 459; 2 Johns. Cha. Rep. 62; 1 Dessaussure, 459, 480.

No interrogatories can be filed in a cause, that do not arise from or relate to some fact put in issue by the bill and answer, and if such depositions are read at the hearing, and chancery decides upon the evidence, though no objection be made at the time, the decree will be reversed on appeal.  6 Johns. Rep. 543; 14 Johns. Rep. 501.

Where a bar to the relief prayed for appears upon the face of

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

the bill, the defendant need not plead or suggest it in his answer, but can take advantage of it on the hearing. 1 Bibb, 173; 2 Bibb, 26.

Entries in partnership books, when evidence, &c. 3 Paige, 566; 5 Mason, 176.

Winchester, for the appellees.

Two objections are made to the decree.

1. That the bill presents no case, upon which any decree can be predicated. It does not pray an account, but simply a sum certain, due upon an account stated. He supposes the equity of the bill rests upon the averment, that the debt is due C. Dart & Co., but that in equity Calvit, as one of the partners, is entitled to the whole of it; and he asserts that the averments in the bill do not present such a case.

The answer to this objection is, 1. That the equity of the bill rests on the fact that Goosey and Dart are members of both firms, and, therefore, no remedy exists at law to recover the sum due upon the account stated. It can only be recovered in equity, where for the purposes of justice, and to compel performance of the contracts made between them according to their true spirit and intent, a court of equity will consider them as two separate, distinct, and independent firms.

It was certainly not the understanding of the contract, when Goosey and Dart agreed, as the active and business partners of C. Dart & Co., to furnish goods, &c., to William F. Markham & Co., that Calvit should never have it in his power to compel payment for these goods and advances, out of the firm of William F. Markham & Co., until after a dissolution of the firm of C. Dart & Co., and a final account taken by a previous suit to ascertain the amount due by Goosey and Dart, upon a final and full settlement of their partnership accounts.

If this were law, Goosey and Dart might have sold to Goosey, Dart & Markham, the whole stock of goods furnished by Calvit to the firm of C. Dart & Co., and by their own neglect to keep the accounts, involve Calvit in years of controversy, to obtain a final settlement of the concern of C. Dart & Co., before he would

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

be allowed to recover the debts due for the goods from William F. Markham & Co.

In fact, this is in amount the present attempt, and if effected will be a gross and most palpable fraud upon S. Calvit. See for the principle of this bill, 1 Story's Eq. Jur. 631; Gow. on Partnership, 101, note *b.*

2. But even if the equity of the bill depended upon averring and proving, that Calvit is in equity entitled to the whole amount of the debt due C. Dart, & Co., upon this stated account.

This is very clearly averred in the bill, which states, that at the time of the dissolution of the partnership of C. Dart & Co., Goosey and Dart were both largely indebted to the firm; that Tacitus Calvit was appointed their mutual agent, and after his death, Smith, to settle the accounts of the firm; that at the time of filing the bill, the agents had been unable to complete the settlement, and that when it is effected, they will be found indebted in an amount larger than the amount due from Markham & Co., to Dart & Co. This averment, I believe unnecessary to sustain the equity of the bill, although it certainly greatly strengthens the equity.

Two firms situated like these having mutual dealings with each other, equity and justice require that a court of equity should compel them to settle, pay their debts to each other, when by their contracts they become due, precisely as any two distinct firms would be compelled to do. Calvit, or C. Dart & Co., have nothing to do with the settlement of the partnership account of Markham & Co., as between Markham, Goosey & Dart, nor has Markham, or William F. Markham & Co., any thing to do with the settlement of the partnership account of C. Dart & Co., as between Calvit, Goosey & Dart.

To decide otherwise, would be to allow one partner to embezzle the partnership effects, and leave the other partner to pay the debts.

2. Second objection to the decree is: That it was error to make a final decree, without first taking an account between the two firms.

The answer to this is, that an account had already been taken and stated, and the balance mutually agreed upon to bear interest

from the 1st day of January, 1827. Although Goosey & Markham, in their answers, pretend to deny this averment in the bill, yet their answers, do in effect admit it. They both admit an account was stated upon the books, of a balance of 9000 dollars, and upwards, but they deny this was a final settlement, and they set up a pretended claim to damages, because they did not continue to make 6000 dollars a year, for four years more, out of Samuel Calvit, under their contract with Goosey and Dart. Their answers, if fully examined by the court, will be considered as admitting, instead of denying the stated account.

But the evidence of Smith is positive to the fact, and is also supported by the fact, that upon Smith, afterwards presenting them with the account, with a statement of payments subsequently made upon it, and showing a balance of the first stated account of 8243 dollars, 8 cents, due in 1830, they both agreed to give a mortgage for that amount, and Goosey executed a power of attorney for that purpose, but Markham the day after wrote a letter declining to give the mortgage, and when afterwards called on by Smith, for the reasons of his change, made no other objection to the account, except that he was unwilling to pay interest upon the balance, but was willing to give the mortgage without interest. In addition to this, they pretend to surcharge and falsify the account. This is an admission of a stated account.

But it is urged, that the court ought to have directed an interlocutory account, because they have attacked the account and set forth specific errors and mistakes.

On examination, I think the court will not consider the errors and mistakes set forth as sufficiently specific to come within the rules as to surcharging and falsifying accounts stated and agreed to between the parties themselves, after a week's laborious examination.

But even if surcharged and falsified, by sufficient allegations, there were no proofs of the allegations of errors and mistakes, and there is the direct and positive testimony of Smith to the contrary.

A court will not direct a settled account to be opened, upon general charges of errors and mistakes, or after long settlement for slight errors, nor even where express and specific errors and

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

mistakes are alleged, unless they are also proved.    There was no proof of any errors, or mistakes.

The third objection to the decree is, that it was error to take final decree, without first taking an account between the members of the firm of C. Dart & Co.

In answer to this objection, I might rely upon what I have remarked upon the first objection, that this is not a bill for a settlement of the partnership account of C. Dart & Co., and that William F. Markham & Co. have nothing to do as a firm with the settlement of that account.    We are only seeking to compel William F. Markham & Co., to pay a debt, which they have admitted to be due to C. Dart & Co.

But suppose it necessary to prove that Goosey and Dart would be indebted to Samuel Calvit, beyond the amount due from William F. Markham; could not this be satisfactorily proved to the court, without taking an account of all the partnership transactions of C. Dart & Co., and ascertaining the exact amount of indebtedness, by Goosey & Dart?

Both Goosey and Markham in their answers admit Goosey's indebtedness although Goosey in one breath denies it, yet in his anxiety to make out the firm of C. Dart & Co. indebted to him for the loss of the 6000 dollars a year profit out of his contract, he avers the failure of the firm of C. Dart & Co., at the time of their dissolution, and so does Markham.

If C. Dart & Co. failed, if Samuel Calvit furnished all the funds of that firm, if William F. Markham & Co., in one year made 6000 dollars, out of that firm, and if William F. Markham & Co., was also debtor to that firm nearly 10,000 dollars, can it be said Smith's positive testimony is unsupported by other evidence, and by corroborating circumstances?

It will be recollected too, when Goosey charges carelessness and losses upon Tacitus Calvit and Smith as agents, that he admits in his answer they were agents mutually chosen of the firm of C. Dart & Co., and not agents of Samuel Calvit, and that Goosey and Dart were bound by the partnership contract, to settle and collect the debts after the dissolution, and is liable for all losses in proportion to his interest, which was one fifth in the concern.

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

Fourth objection: There is the evidence of but one witness in this case, to wit, James M. Smith.

It is here urged, that the gist of the action is Goosey's indebtedness on final settlement, to S. Calvit, and it is said Smith's evidence is secondary, upon what appeared from the books, many years after a dissolution of the firm, and many years after Goosey and Dart had any access to the books.

In answer, It seems to be forgotten that Smith was the agent of C. Dart & Co., and that Goosey and Dart, as his principals and employers, have always had access to the books, if they chose. Even if this evidence were secondary, it is not, therefore, illegal or incompetent testimony, and if admitted without objection in the court below, forms no ground for reversal upon appeal. For aught appearing in the record, it was read without objection. But it is not secondary evidence. It is the evidence of an agent appointed by the firm to settle the accounts upon the books. But, even without Smith's evidence, Goosey's answer taken altogether, is an ample admission of his indebtedness.

In conclusion. By the partnership contract, in 1823, "Goosey and Dart, bound themselves to conduct the business of the firm of C. Dart & Co., to keep a fair, faithful, and true account of all moneys received, and of all merchandise and other things purchased for the use of said firm, and of all goods and other things sold, and of all moneys paid out by and for said establishment, and of every transaction of what nature soever, relating thereto, for which they were to receive half the net profits," and Calvit furnished store and warehouse free of rent, and all the capitals, for which he was to receive the other half of the profits. They were to bear the losses in the proportion of their respective interests. And whenever the partnership should be dissolved, " Goosey and Dart agreed to settle all accounts, and collect and pay all the debts due by, or to the establishment."

Instead of performing these obligations, they sold to themselves and Markham goods out of which, in one year, they made a profit of 6000 dollars, and owed the firm of C. Dart & Co. upwards of 9000 dollars; and now, that by their mismanagement, that firm has failed, and Calvit has had all the debts to pay, Goosey seeks to delay the payment of the 10,000 dollars, until agents

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

can make that settlement of the affairs of the concern which Goosey and Dart were bound to do, and which, from the loose manner in which they kept their accounts and books, it is likely enough never can be done.   And he has the modesty to pretend that he is not indebted to Calvit, because losses have happened by the neglect of his own agents, and because C. Dart & Co. failed, and were thereby unable to supply Markham & Goosey with goods for four years more, and to wait for payment of them until Calvit could discover the state of the accounts, and establish it in a court of equity, between himself and Goosey and Dart, as members of the firm of C. Dart & Co.

The decree was rendered at the July term, 1834, and executions have been twice issued and superseded.   It is time these delays were ended, and that justice should have its course.   William F. Markham & Co. bought the goods on a very long credit, if they were not bound to pay for them, until all the partnership transactions of C. Dart & Co. could be finally closed by a decree in equity.

" If accounts are impeached on the ground of error, you must specify some or one error, and prove that, and that is a ground to surcharge and falsify."   9 Vesey, 266.   No error is proved in the stated account in this case, and no ground laid to surcharge and falsify.

" The law, as well as the act of the parties, provides, that accounts settled shall not be set aside but for fraud; or surcharged or falsified, but for error."   9 Vesey, 265; 1 Atkyns, 1; 2 Bro. C. C. 310; 1 Scho. & Lef. 182, 192; 1 Bro. P. C. 3.

If in this case the bill had prayed a settlement of the partnership account between Calvit, Goosey and Dart, the bill would have been demurrable for joinder of separate and distinct causes, as Markham has no interest in the account, and could not be drawn in as a defendant to all the expenses of a litigation of their partnership accounts.   2 Maddock, 294.

" Where an individual is a common partner in two concerns, no legal contract can arise between the partnerships, and therefore, no engagement entered into, or debt incurred, by the one, with or to the other can be enforced at law."   Gow. 101, note *b.*

30*

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

" In equity all contracts and dealings between such firms, of a moral and legal nature, are deemed obligatory, though void at law. Courts of equity in all such cases look behind the forms of the transactions to their substance; and treat the different firms, for the purposes of substantial justice, exactly as if they were composed of strangers, or were in fact corporate companies." 1 Story's Equity Jurisprudence, p. 631.

Marsh, in reply.

The answers deny the facts stated in the bill. They are not supported by any testimony except that of a single witness who says he compared the books and accounts of C. Dart & Co., and found the sum due to Calvit for which this suit is brought, and on this single unsupported testimony, expressly denied by both answers, the decree is founded.

The rule is, that the answers in response to the bill are to be taken as true, unless disproved by two or more credible witnesses, or the positive testimony of one unimpeached witness, supported by strong corroborating circumstances. Smith does not stand in the light here of a witness wholly free from bias. He was the agent and relative of complainant, and is unsupported by any other witness, or any corroborating fact. His receipt as the agent of plaintiffs, for notes for a large amount from Markham and Goosey, is apparent in the cause, and remained wholly unaccounted for. Smith's examination was *ex parte.* The affidavit of Caldwell shows the cause, and on that showing, the court ought to have opened commissions. But in the face of these denials in the answer, the one-sided nature of the unsustained deposition of Smith, without the opportunity of being cross-examined, and in the face of this large amount of the notes left with the witness to collect and apply to the mutual accounts of Calvit, Dart, Markham & Goosey, a decree is pronounced against the denials of the answers, and without any accounting for the notes! Is this the appropriate province of a court of equity? It seems to me that that court will not extend its extraordinary aid, except in a case where the justice is clear, and there can be no doubt, and also where it is equally clear that a complete and adequate remedy could not be afforded by the legal tribunals. Is this such a case?

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

Does this record show a case clear beyond a reasonable doubt that the decree settles all the matters of the accounts between the parties, and does no color of injustice to Markham & Goosey?

But if it be true to the mind of the court that the amount taken by Smith was undisputed and final, without any just offset—in that case, the remedy was at law for a sum fixed and certain, and does not possess one feature calling for the aid of a court of equity. The very principle on which this decree is made without a reference to take the amount and balance, then, excludes this court from its jurisdiction, and the bill should have been dismissed, and the party left to his remedy at law.

Dart's answer does not change this view of the case. The decree is not founded on that answer, but on the supposed finding of Smith, the arbitrator, as he is called. The rule is, that the answer of one cannot be read as evidence against a co-defendant.

The court erred in other particulars; the bill of review should have been allowed.

Mr. Justice TROTTER delivered the opinion of the court.

The appellants have assigned the following errors:

1. That the bill presents no case upon which any decree can be founded; and it is urged in support of this objection, that there is no prayer for an account to be taken between the two firms, but a decree for a sum certain upon a stated account. It is a well settled principle, that one partner cannot sue his copartner at law for any matter touching the partnership contract. The reason of this rule lies in the difficulty of adjusting long standing and complicated accounts in the courts of common law, and the necessity of disclosures on oath of matters resting necessarily within the private knowledge of the parties. This necessity ceases, however, where the parties have themselves made a settlement and agreed upon the balance; and the partner in whose favor the balance is so found, may recover it by an action at law. The principle thus stated would be decisive of this question if it was not for the peculiar relation of the parties in this suit to each other. Goosey and Dart, two of the members of the firm of C. Dart & Co., are also members of the firm of Markham & Co. The balance stated on the settlement and claimed in the bill, is,

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

therefore, due from them to themselves and Samuel Calvit. It is, therefore, a contract which cannot be enforced at law, because one cannot sue one's self. The remedy is, therefore, in equity, " where, for the purposes of substantial justice, the court can look behind the forms of the transactions to their substance, and treat the different firms exactly as if they were strangers." Story's Eq. Juris. 631. And where an individual is a common partner in two concerns, no legal contract can arise between the partnerships, and, therefore, no engagement entered into, or debt incurred by one, to or with the other, can be enforced at law. This we take to be a conclusive answer to this objection.

2. The second error relied on for reversing this decree, is the refusal of the chancellor to make an interlocutory decree, and direct an account to be taken between the two firms. The bill expressly charges that an account had been taken, and that the sum claimed was agreed between the parties to be the true balance due the house of C. Dart & Co. It is true the answers deny that this was a final settlement. But the allegation of the bill is supported by the positive and consistent testimony of Smith, the agent of C. Dart & Co., who states, that he and Markham were engaged laboriously, for the period of one entire week, in the examination of the books. In this he is supported by the admissions in the answers, that the settlement was made, as well as by the exhibits of Markham's letter, and the power of attorney from Goosey to Markham, to execute a mortgage for the balance stated on the settlement. If the settlement stated by Smith was not final, and so agreed upon, why did Markham and Goosey acquiesce in it for so long a time? And why do they, as late as 1830, acknowledge it to be so? In a case before Lord Hardwick, he decided that if one merchant send an account current to another, in which a balance is made due to himself, and the other keep it two years without objection, it will be considered a settled account. 2 Ves. Sen. 230. It is not the actual signing of the account by the parties, that makes it a stated one; it is acquiescence and length of time without objection, and this binds. 2 Atkyns, 252. There is no reason, therefore, to doubt that this was a final settlement; and there was, consequently, no necessity for an interlocutory order, unless the appellants have,

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

by their answers and proofs, laid a ground to surcharge and falsify the account. Have they done so? Both Markham and Goosey charge that some of the articles in the account were overcharged, and that several credits to which they were entitled, were overlooked. But there is no one article or credit specified. This general charge of error is not sufficient. In the case of Taylor *v.* Haylin, 2 Bro. Ch. C. 210, Lord Thurlow stated the rule upon this subject to be, that if accounts are impeached on the ground of error, you must specify some one error, and prove that, and that is a ground to surcharge and falsify. This rule was subsequently recognised and enforced in the case of Chambers *v.* Goodwin, 9 Ves. Jun. 266. In that case, it was said by the complainants, who wished to impeach an account which had been stated and found against them, that in the accounts *pretended to be settled*, several manifest errors and overcharges existed. But the court said this general way of charging error will not do; some error must be specified. This rule is founded in the obvious injustice of permitting the party to come at the hearing with proof of errors of which his adversary has heard nothing, and could not, therefore, be prepared to meet. The chancellor was, therefore, right in refusing to open the account.

3. The third error assigned is, that a final decree was made without taking an account between the members of the firm of C. Dart & Co. The force of this objection arises from the supposed want of proof of title in Calvit's executors, to the whole of the debt claimed. It is assumed that there is no other method of ascertaining this fact, than the one pointed out in the assignment of the error. In ordinary cases, this is undoubtedly true, and that one of several partners cannot claim the whole of any debt due his firm. He can only recover it for the benefit of the firm. But this case may, as we conceive, well claim to be an exception to this rule. It surely does not lie with Markham to urge this objection, because he has no connection with, or interest in the concerns of the firm of C. Dart & Co. The only other members of the firm of Markham & Co., are Goosey and Dart, and they are the only persons interested to urge the settlement of the affairs of the firm of C. Dart & Co. But they are parties to this suit, and are expressly charged to be indebted to Calvit in a much

larger sum than is claimed by the bill. It is true that Goosey's answer denies that he is indebted to the firm, and that he claims to be a creditor of the same. But it is evident from the whole of his answer, that he founds his claims against the firm of C. Dart & Co., upon a failure to comply with its engagements to deliver goods to the firm of Wm. F. Markham & Co., as stated in his answer. This we deem altogether evasive; and, independent of this averment in the answer, it is evident he could lay no claim to any part of the sum decreed to Calvit's executors. But, independent of this circumstance, the allegation in the bill is fully supported by the consistent and satisfactory testimony of the witness, James M. Smith. Goosey does not deny that Calvit furnished the entire capital of the firm, nor that he, Calvit, paid the debts of the firm to a much larger amount than the sum claimed by his representatives. How then does the transaction present itself? Calvit paid in all the capital, and discharged with his individual funds all the debts of the firm. It is now insolvent, and for a much larger amount than the sum due from Markham & Co. Do not these well established facts prove Calvit to be a creditor of the firm for a larger sum than the firm can ever pay? And is he to be put in a worse condition than any other creditor who stood unconnected with it? Can any one doubt, in view of all the proofs in this cause, that Calvit is entitled to the whole of this debt? If the chancellor had the power to order an account to be taken between Goosey, Dart and Calvit in this cause, could such an order have put it better in the power of Goosey and Dart to contest Calvit's claim in equity? But if the bill had prayed an account as contended for, it would have been subject to demurrer for uniting distinct and separate causes of action, and, therefore, the chancellor had no authority to order an account taken. 2 Mad. 294. We are, however, perfectly satisfied, from the proofs in this cause, that Calvit is entitled to this debt. Smith proves that Dart was a debtor to the firm of upwards of 6000 dollars, and that Goosey was likewise indebted, but in a much smaller sum. But it is objected to this testimony, that it was of a secondary nature. It is sufficient to remark, in answer to this objection, that Smith is admitted to have been the mutual agent of the several members of the firm of C. Dart & Co., to settle the accounts of

[Calvit's Ex'ors, Appellants, *v.* Markham *et al.*]

the firm, and it does not, therefore, lie with Goosey to urge the objection. For all the purposes of this suit, it may, therefore, be safely affirmed that there has been a settlement; and though it was not final, it was, as we think, sufficient to establish Calvit's title to the debt sued for.

The only remaining objection to the decree, which it is deemed necessary to notice, is the one that the chancellor founded his judgment upon the testimony of a single witness. This has been disposed of in the opinion expressed upon the second ground of error. Smith's testimony, in all its material statements, is fully sustained by the answers, and the collateral proofs furnished by the exhibits in the record.

Let the decree of the court below be affirmed with damages and costs.