JUDGE HINES
delivered the opinion of the court.
This appeal in Commonwealth v. Avery was taken from • the judgment of the court below sustaining a general demurrer to the following petition:
“The plaintiff, the Commonwealth of Kentucky, states that on the 7 th day of December, 1875, an election was held under the laws and constitution of this Commonwealth for the office of mayor of the city of Louisville. Plaintiff states that on the — day of November, 1875, the defendant and Samuel L. Avery wagered or bet upon the result of said election, with one Thomas H. Hays, the sum of ten thousand, dollars ($10,000). Plaintiff states that the defendant made the said bet or wager in the county of Jefferson and state of ' Kentucky, and that he was the winner of and received the said sum of ten thousand dollars ($10,000) so bet, contrary to the statute in such cases made and provided, whereby the said sum was forfeited to this Commonwealth.
“Wherefore plaintiff prays judgment for said sum of ten thousand dollars ($10,000), and for all proper relief.”
*629 The statute by authority of which this action was instituted is sections 1 and 2, article 2, chapter 47 of the General Statutes, and reads as follows:
“Sec. 1. If any person shall wager or bet any sum of money or any thing of value upon any election under the constitution and laws of this Commonwealth, or the constitution and laws of the United States, he shall forfeit and pay the sum of one hundred dollars, to be recovered by indictment in the circuit court of the county Avhere the bet is made, or in any county where the party so offending may be found; and, in addition to the fine aforesaid, if the person winning shall receive the sum of money or other thing so bet, or its value, or any thing therefor, the sum of money so receÍAred, or the value of any thing else so received, shall be forfeited to the Commonwealth, and may be recovered by any appropriate action in the name of the Commonwealth, before the circuit court or the presiding judge of the county court, wherever the offending party may be found.
“ Sec. 2. One half of all fines and forfeitures denounced or prescribed in any section of this chapter, after the payment of proper fees and expenses of the prosecution, shall inure to the benefit of the common-school fund, and the other half to the Commonwealth.”
This case was formerly heard on appeal from a judgment sustaining a demurrer to the jurisdiction of the court below, and in the opinion then delivered, reversing the judgment, this court said:
“It is conceded that the Common Pleas Court has no criminal or penal jurisdiction, and Avhether it has jurisdiction of this action or not must depend upon the question Avhether it is a civil action.
“ That the legislature may authorize a civil action to be maintained for the recovery of a forfeiture, has not been disputed.
*630 “The action of debt has always been esteemed an appropriate action for the recovery of a penalty imposed by statute.
“ This action, though not in name an action of debt, is such in its nature, and is an appropriate action for the recovery of the alleged forfeiture, and was within the jurisdiction of the Jefferson Court of Common Pleas.”
Section 118 of Myers’s Civil Code, under which this action was instituted, provides that the petition shall contain “ A statement in ordinary and concise language, without repetition, of the facts constituting the plaintiff’s cause of action.”
It is contended for appellee that the petition does not meet the requirements of this section: first, because it fails to allege that appellee bet for or against the election of any person; second, because it does not show that appellee had previously been convicted of the offense of betting on the election; third, because the allegation of the petition is of a “bet on the result of the election,” instead of a “bet on the election,” as in the language of the statute.
So far as the questions now under consideration are concerned, appellant’s cause of action is dependent upon the existence of the following facts: that a bet on the election was made by appellee, and that the sum of money so bet was won and received by him.
It is insisted that the allegation that appellee bet on the result of the election is the statement of a conclusion.of law, and that the petition should charge that some designated- individual was a candidate for the office mentioned, and that he was voted for at the election.
Treating this as a civil action, as we have already determined it should be treated, it appears clear that this objection is not well taken. The ultimate fact to be established by evidence is that a bet was made, and that being a mixed question of law and fact, to charge, as. insisted, would be to plead the evidence of the fact, which is not permissible any *631 more than it would be to plead a mere abstract conclusion of law. In the same sense the charge of “negligence;” that designated articles furnished an infant were “ necessaries;” to charge the “making” of a written instrument; that one “converted” certain things to his own use; that one “signed” a note, “accepted” a deed, bill, or draft; and that one “conveyed” a tract of land, are all compound allegations of conclusions of law and of fact, yet they have been held not to be obnoxious, in this regard. (Newman on Pleading, 247; Eversole v. Moore, 3 Bush, 51; Boone’s assignee, &c. v. Hall, &c., 7 Bush, 67.)
But applying the stricter rule of criminal pleading to this petition, we are not prepared to say that its allegations are not sufficiently specific for an indictment.
In general an indictment for receiving stolen goods, knowing them to be stolen, need not state the name of the person who stole them, and the allegation that his name is unknown to the grand jury is equally immaterial. (People v. Alvila, 43 Cal.; State v. Copenhagen, 2 Strobh; Swaggerty v. State, 9 Yerger; State v. Hazard, 2 R.I; State v. Murphy, 6 Ala.; Commonwealth v. State, 11 Gray; State v. Smith, 37 Mo.; 2 Green’s Criminal Reports, 530; Wharton’s Criminal Law, secs. 1899 and 1900.)
In State v. Cross, 2 Humphries, 302, it is said that, in an indictment for betting on an election, “ it is not necessary that an indictment should allege that the party bet upon the success of any particular candidate.”
In State v. Little, 6 Blackford, 267, it was held that an indictment to the effect that “the defendant did then and there unlawfully win of and take from one N. G. two promissory notes, commonly called treasury-notes, of the value of $5 each, by then and there betting upon the result of the August election in Marion County for senator,” etc., was sufficient. It will be observed that there is no direct averment *632 that the bet was made with N. G., but the court held that “by necessary implication” such was the meaning of the indictment. (Miller v. The State, 4 Miss. 359.)
The cases of Commonwealth v. Shouse, 16 B. Mon. 328, and Commonwealth v. Stephenson, 3 Met. 227, cited by counsel for appellee, do not appear to be in necessary conflict with the cases above cited. In Commonwealth v. Shouse the indictment alleged that the bet was that Goodnight would be elected sheriff at the August election, but did not charge that he was a candidate for that office. In the opinion it is said that “ it is not a statutory offense to bet that a man will not be a candidate for a particulár office.” The effect of the opinion is to hold, not that it is necessary to mention in the indictment the name of the person in reference to whom the bet is made, but that if the name is mentioned it should appear that the person was a candidate or voted for at that election.
In the case of Commonwealth v. Stephenson the court held the indictment for bribery at an election good, although there was no direct averment that an election was held at the time and place stated in the indictment. That fact is inferred by the court from the other alleged fact that the party bribed voted for the persons mentioned in the indictment.
But however that may be, the reason for the stricter rule in criminal procedure ceases when applied to a civil proceeding governed by the Code of Practice; for every bet that appellee may have made, no matter with reference to whose candidaey, he is amenable to the law; and if, when the petition is substantially good, as in this instance, it is important to his defense that it should be more specific, he has ample remedy, by motion, on a proper case shown to the court. But a necessity for resorting to motion for relief can rarely arise in such cases, for the reason that the terms of the bet, if made, are peculiarly within the knowledge of the parties to the agreement.
*633 It was provided in Myers’s Code that all its provisions and all proceedings under it should be liberally construed, with a view to promote its objects, and assist the parties in obtaining justice. The extreme rule contended for by counsel for appellee would have the opposite effect — to defeat substantial justice. It is unnecessary to determine whether our conclusion would have been different if the petition had been drawn under the Code of 1877, from which is omitted that provision of Myers’s Code above quoted. It is sufficient to say that, so far as the objections already' discussed are concerned, we have no doubt as to the sufficiency of the petition.
Counsel for-appellee further insist that the petition is defective in that it alleges “ a bet on the result of the election,” instead of “a bet on the election,” in the language of the statute. Under similar statutes in other states these expressions have been, with .great uniformity, held to be synonymous. They have been understood and applied in their ordinarily accepted meaning and with a view to remedy the evils manifestly intended to be corrected by the statute. To bet on an election, nothing more specific being charged, is to bet on the “event” or “result” of an election, as it may affect a particular candidate for office. Thus used the allegation can not be construed to have reference to the effect that may be produced by the election upon the price of commodities or the value of real estate. While we do not pretend to say that a wagering agreement might not he so framed in reference to such matters as to come within the circle of the evils that it was intended the statute should reach, it is clear that the expression in the petition “on the result of the election,” is an apt phrase to designate a bet upon the success or defeat of a candidate, and is manifestly covered by the statute. To say that one “ bet on the result ” of an election does not necessarily imply that the bet was made after the election had been *634 held, nor would it be material if the bet was made before the result was declared.
In Miller v. The State, 33 Mississippi, 360, it is said: “ The evils resulting to the commonwealth may be, and doubtless are, greater from the practice of betting upon future elections than would result from the same practice if confined to elections which had previously taken place. But, for that reason alone, we are not authorized to restrict the plain and express language of the statute, to the practice of betting on elections to be held after the bets are made, and that, too, in the face of the manifest object of the legislature, which was to suppress entirely the evil practice of gaming of all kinds.” The language of the statute of Mississippi is, “if one wager or bet upon the result of any election,” etc.
In Browne’s C. P. Reps. (Pa.), reported in 9 Cowen, 180, Rush, president, after holding that the bet was an offense against the statute, whether entered into before or after the election was held, and before the result had been declared, says: “Popular suffrage is the very essence of freedom, and can not be protected by tribunals of justice with too much vigilance and firmness. Those external impressions that have a tendency to disturb its orderly and regular motions should be discountenanced, as repugnant to the vital interest of the. country. To the usual motives that actuate voters it would be monstrous to permit pecuniary considerations to be added.” (Brush v. Keeler, 5 Wend. 250; The State v. Little, 6 Blackf. 267; Terrall v. Adams, 23 Miss. 570.)
By counsel for appellee we have been referred to two cases that, it is insisted, hold to the position that, a bet made after an election, on the result thereof, is not against the statute. The first is The State v. Mahan & Henry, 2 Ala. 340. A demurrer was sustained to an indictment, charging that the bet was made on the 10th of October, 1839, on the result of an election held in August, 1839. The court held that the demurrer *635 was properly sustained, and said that the statute applied only to elections that had not been consummated. The conclusion reached by the court appears to be a correct one, but not for the reason assigned. The demurrer should have been sustained, because the indictment showed that the election .had been held two months prior to the time the bet was made, but did not charge that the result was unknown to the parties at the time the bet was made. After such a lapse of time, and in the absence of any allegation to the contrary, the result of the election would be presumed to be known to the parties. In that case there could be no offense against the letter or the spirit of the statute.
The other case reférred to is The State v. McLelland, 4 Sneed, 438. The indictment was quashed because the statute denounced betting on elections in Tennessee, and the indict.ment showed that the bet was on the result of an election then being conducted in Kentucky. All that is said in the opinion as to a bet made after an election is consummated is mere dictum, and in express language refers to another case then pending in that court, and not in any way to the case then being considered.
In some of the cases under consideration the petition alleges that the bet was made on the day of , 1875. It is insisted that it is defective, because it does not expressly show that the bet, was made before the election was consummated. That is not a matter for general demurrer, and could only be corrected by motion to make definite under section 161 of Myers’s Code. The petition in that regard states a prima fade case of liability on the part of appellees.
The next inquiry is, was it necessary to state in the petition that appellee had been previously indicted and convicted of the offense of betting on the election ?
In the investigation of this question two things are to be considered: first, does the language of the act under which the *636 action is .brought authorize the institution of the civil action before a conviction under indictment in the penal action ? and second, if such authority exists by the language of. the statute, is there any constitutional inhibition ? For convenience both subdivisions will be considered together, without any formal separation of the authorities cited or of the suggestions made.
Much importance appears, by argument of counsel, to be attached to the fact that the provision for punishment by indictment precedes the portion of the section giving the civil remedy, and that they are connected by the words “ in addition to the fine aforesaid.”
It appears to us that these words, in their ordinary meaning, as they must be presumed to have been understood by the law-makers, do not carry with them any idea of sequence or order of time, but as being synonymous with “ also,” “ moreover,” “likewise” — they not only fail aptly to express the idea of dependence or sequence, but they do not express it at all. It must be taken for granted that such an intention, if in the mind pf the legislator, would have been 'expressed in language ordinarily employed to convey such an idea; that it would have been conveyed by such expressions as “after such a conviction shall have been had,” “before an action to recover the amount sd received,” “before any recovery,” etc.
Suppose the penalty by indictment was given in the first section, and.the right to recover in the civil, action in the second section) would it be contended that the one should precede the other in order of time in the courts? And so, if the civil remedy had been first given in the section, and the proceeding by indictment had followed in the same section, connected with the first by the words “in addition thereto,” according to the construction contended for, there could be no proceeding by indictment until a recovery in the civil action. Unless there is something inherent in the nature of the two proceedings that makes the one dependent upon the other, it is clear *637 that their independent relation is not changed into one of de-, pendence by the fact that the one precedes the other in the, section, or that they are connected by the words “in addition.”
In The People v. Stevens, 13 Wendell, 341, the facts as stated by the court were: “The 15th section of that portion of the Revised Statutes, which treats of excise and the regulation of taverns and groceries, declares that whoever shall sell any strong or spirituous liquors, without license, . . . shall forfeit $25. The 16th section imposes a like penalty upon any person who shall sell such liquors to be drunk on his premises . . . without having obtained license as a tavern-keeper; and the 19th section provides that such penalties shall be sued for by the overseers of the town where the offense is committed. It is contended that no indictment will lie for the violation of these sections of the act, because the offense was created entirely by statute, which also imposes a specific penalty ; second, that to subject a party to a penalty, and also to an indictment is punishing him twice for the same offense. . . . It is undoubtedly competent for the legislature to subject any particular offense^ both to a penalty and a criminal prosecution; it is not punishing the same offense twice. They are but parts of one punishment; they both constitute the punishment which the law inflicts upon the offense. That they are enforced in different modes of proceeding and at different times does not affect the principle. It might as well be contended that a man was punished twice when he was both fined and imprisoned, which he may be in most misdemeanors.”
In Blackley v. Moser, &c., 15 Wend. 215, a civil action was instituted under the above-mentioned statutes, and the defendant pleaded in bar the pendency of an indictment against him for the same offense, and the court held the plea not good.
*638 In Commonwealth v. Gilbert, 6 J. J. Mar. 188, opinion by Judge Robertson, it is said: “If both penalties should have been inflicted on Mrs. Gilbert she would' have had no cause for complaining that she had been punished twice for the same offense. Even if the offenses had been precisely the same, the legislature had the power to inflict a penalty in behalf of the town, and another penalty in behalf of the county.” This was an indictment under a general statute denouncing a punishment against any one who permitted a slave to go at large and hire himself out. The defense relied upon the fact that the slave had hired herself out nowhere but in the town of Richmond, and claimed that a subsequent statute authorized the town council of that place to hire out or imprison any slave found going at large or hiring himself out. The language of the last act is: “ If any slave shall be found going at large . . in Richmond, working for himself or herself, or contracting or dealing for himself or herself, for more than one day at a time, it shall be lawful for the trustees of said town to cause such slave to be hired out to the highest bidder for the term of ten days, or to commit such slave to jail for ten days, and until his or her prison-fees are paid by his or her owner; the money received for such hiring to go in aid of the funds of the town.”
The radical error in the argument of this case seems to result from a misunderstanding of, and consequently, a misapplication of the word “ forfeit,” as used in the statute under consideration. Where the statute says the offender shall “ forfeit ¿nd pay the sum of $100 to be recovered by indictment,” we understand the meaning to be that the party shall be fined $100 to be recovered by indictment. Foi’feiture, in the sense urged in argument, and as understood at common law, transfers the title to the specific thing from the owner to the sovereign power. As used here it can have no such meaning. The statute declares the forfeiture of $100; but as there is no desig *639 mated or identified “ $100” to be forfeited, the meaning must be that the Commonwealth, by indictment, may recover of the offending party that sum, to be levied of his goods, chattels, or property. That portion of the section under which this action was brought demonstrates that to be the correct conclusion. It provides that the sum of money so received, or the value of the thing bet, won, and received, shall be forfeited. Following the idea of counsel, the judgment would necessarily be for the recovery of the particular money received, and not a judgment that the plaintiff recover of the defendant a certain sum to be coerced by execution; and to complete the analogy the judgment of the court would necessarily be for the recovery of the property received by the winner, instead of its value. Such a view can not be entertained for a moment. It is manifest that there was not even a suspicion on the part of the legislature that the word “ forfeit ” was being used in any other sense than that of “ fine.”
It is insisted for appellee that sections 12 and 13 of article 13 of the state constitution, and the construction above, applied to the statute under consideration, brings the constitution and the statute into irreconcilable conflict.
Sec. 12. “ That in all criminal prosecutions the accused hath a right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; . . . nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers, or the law of the land.
Sec. 13. “ That no person shall, for an indictable offense, be proceeded against criminally by information, etc.”
This is not a “ criminal prosecution,” nor “ an indictable offense ” within the meaning of the constitution. Betting on an election was never a crime or an indictable offense at common law, nor is the offense, as prescribed by the statute, to be visited with any infamous punishment, and it does not there *640 fore come within the meaning of the 12th and 13th sections of the constitution, above quoted, either as a “ criminal prosecution ” or as ■“ an indictable offense.”
Is it a proceeding according to the law of the land ? It is competent, as we have seen, for the legislature to prescribe what shall be the mode of trial for a misdemeanor created by statute, which was not indictable at common law, and for which no infamous punishment is provided. (Proffatt on Jury Trial, sec. 97.) The legislature having denounced the penalty, and prescribed a method for its recovery, in which a hearing is granted the accused, the trial by jury is preserved inviolate, and a judgment before dispossession prescribed. This, we think, is all that the constitutional “ law of the land ” requires in such cases.' (Cooley’s Constitutional Limitations, p. 356.)
None of the cases cited by counsel appear to be in conflict with this view. The greater number of the cases to which our attention has been called were cases., in which the court held that the statutes prescribing forfeiture of land for non-payment of taxes or failure to improve were not self-executing; that a judicial proceeding was necessary to divest title. Such was the ease of Gaines v. Buford, 1 Dana, 508, relied upon by appellee.
Judge Nicholas, delivering the opinion in that case, says, “ It would seem, therefore, hot merely from the apparent import and spirit of the constitution, but from the settled construction given to its language by these concurring authorities, that Gaines was entitled to a hearing, and some mode of trial by a jury, before his property could be taken from him for this alleged violation of law, in failing to make the required improvement.”
After commenting on the constitutional provisions guaranteeing a hearing and trial by jury before the citizen can be deprived of his property, he says: “ It is no satisfactory answer to these suggestions, that ]the question of forfeiture is *641 adjudicated upon by a court of justice, and that Gaines has had a public trial before a jury in this action of ejectment. He was there defending no plaint of the Commonwealth; there was no accusation against him at the instance of the Commonwealth of which he was notified and called upon to defend; nor was a jury sworn to try an issue between them. It was no prosecution, carried on in the name and by the authority of the Commonwealth of Kentucky. The question of forfeiture and divestiture of title came up collaterally only.”
None of these cases either directly or indirectly hold or intimate that it was not competent for the legislature to prescribe a method of civil trial by jury, in the name of the Commonwealth, through which the declaration of forfeiture might be carried into effect. On the contrary, the power to thus forfeit is expressly recognized.
It is apparent that the case of Commonwealth v. Jones, 10 Bush, 725, can have no bearing on the cases under consideration. In that case the court held that sending or accepting a challenge was a criminal offense, and that under the constitution Jones was entitled to a trial, upon indictment, in a direct criminal prosecution, upon that specific charge before the penalty denounced by the law of thd land could be inflicted. The constitution guaranteed him a trial 'by jury, under indictment/ with all its forms before the severe penalties denounced could be inflicted.
We have seen that the offense in this instance is purely statutory; that the legislature, having limited the punishment to a fine, has the constitutional power to prescribe that the punishment should be inflicted by proceeding in a civil action or by indictment, one or both, and that neither was dependent upon the other.
Wherefore the judgment is reversed, and causes remanded for further proceedings consistent with this opinion.