THE STATE, EX REL. J. DAYTON WINANS, v. THE COMMISSIONERS OF HIGHWAYS IN THE TOWNSHIP OF CRANFORD.

1. A special charter of the township of Cranford provides that whenever a petition, signed by the owners of one-half the lineal feet upon one side of a portion of a road, requesting that the sidewalk on that side of the portion of the street shall be laid in a certain manner, shall be presented to the board of road commissioners, that then the property owners on that side shall be required to improve the sidewalk in the manner mentioned. It further provides that in default of any owner making such improvement within thirty days after notice, the board should do the work and assess the expense upon the owners.

*Held,* that when the statutory conditions exist, the duty of the board
to require the owners to improve, or, upon neglect of the owner to do
the work, to have it done, is purely ministerial.

·2.  Property owners are not entitled to notice or to a hearing previous to
the execution of such a duty.

---

This writ brings up a petition for the building of a side-
walk on a part of a street in the township of Cranford, a
resolution directing notice to be given to the abutting owners
on such part to build the same, and a further resolution
directing the work to be done by the township.

Argued at February Term, 1894, before Justices DEPUE
and REED.

For the prosecutor, *Richard V. Lindabury.*

For the defendant, *Edward S. Atwater.*

The opinion of the court was delivered by

REED, J.   Under the special act creating the township of
Cranford, the control of public roads is put in the hands
of five commissioners.   *Pamph. L.* 1872, *p.* 330.

A supplement (*Pamph. L.* 1875, *p.* 538) touches the build-
ing of sidewalks.   This section provides " that whenever a
petition in writing shall be presented to the said board of
commissioners of public highways, signed by the owners
of one-half of the number of lineal feet upon one side of
any road, street or avenue in said township, or upon so much
of one side thereof as lies between two points named in said
petition, requesting to have so much of the sidewalk of said
street as lies between the points named and upon that side of
the street named in the petition, laid with stone, plank or
composition, in such manner as to make a firm and dry side-
walk, and setting forth the material to be used and the width
of the walk to be made, the property-owners shall be required
to improve the sidewalk in manner set forth in the petition ;
and in default of any property-owner, within thirty days

after being notified to make said improvement, neglecting or refusing to make such improvement, the said commissioners for the time being shall, without delay, proceed to lay the same or cause the same to be laid in accordance with the request of said petition."

The section then proceeds to direct that the cost of the same shall be assessed upon the owners on the side of the street where the sidewalk is laid, in proportion to the number of lineal feet owned by the abutters.

The petition before us asked for a sidewalk to commence at a point at the southerly corner of one Garvey's property and extending along the easterly side of Centennial avenue to a point one thousand eight hundred feet from the point of beginning.

It is not a point of contention that the petitioners did not represent a majority of lineal feet included in this distance. The attack upon the resolution ordering the work to be done is made upon two grounds.

It is insisted, in the first place, that all of this one thousand eight hundred feet line of proposed sidewalk is not along the easterly side of Centennial avenue, but that a part of it is along another road.

It is insisted, in the second place, that notice to the abutting owners was an essential prerequisite to any legal order made after the filing of the petition, and that no such notice was given.

The first part involves a question of fact only, and we think the fact is that the street known as Centennial avenue extends along and beyond the one thousand eight hundred feet line of sidewalk. The road laid out in 1876 and the public road into which it ran have been practically one road since then. That one road has been popularly known as Centennial avenue. The railroad station located on the old-road portion of this continuous street is recognized as the Centennial Avenue station. Business men on the same part advertise their places as on Centennial avenue. Residents upon the same part understand that they reside on Centen-

nial avenue. In fact, the new and the old road are to be regarded as a single avenue, recognized by the public as such under the name designated.

The second point involves a legal question. It is whether the persons interested in the work to be done were entitled to notice, so that they could be heard before the board of commissioners before the orders were made.

In scanning the section of the act which defines the power and imposes the duties upon the board, it will be observed that when a petition is filed in accordance with the provisions of the act, there is no discretion left in the board in regard to what course shall then be taken.

The language of the act is imperative that, upon the existence of this condition, the owners along the line designated in the petition shall be required to improve the sidewalk.

Nor is there, if any owner fail to improve after a thirty-days' notification, any discretion permitted to the board. The language of the act is equally peremptory that, in that event, the commissioners shall, without delay, proceed to lay the sidewalk.

It is observed, therefore, that if the condition exist, nothing that any abutting owner could say could in the least degree change the order of subsequent procedure.

In such a juncture a clear, specific duty is imposed upon the board, and it is unquestionable that, under ordinary legal rules, such a duty is in no sense judicial, but is purely ministerial in character. It is equally indisputable that the requirement of notice to interested persons appertains only to the execution of judicial functions.

It is insisted, however, that the ascertainment of the existence of the condition upon which this ministerial duty is imposed upon the board is itself an exercise of judicial functions.

It is argued that it was essential that the board should determine, as a condition precedent to any further action, whether the persons signing the petition were property-owners abutting upon the side of that part of the street to be

improved, and whether they owned the requisite number of lineal feet along the same. Upon these questions, it is. claimed, the abutters were entitled to a hearing.

Now it is, of course, perfectly obvious that the board must take notice of the fact that a petition, signed by the required number of persons and requesting the execution of the kind of improvement mentioned in the act, has been filed. It cannot be denied, however, that it is difficult to imagine any specific duty which has been judicially recognized as ministe-- rial which does not rest upon the existence of some condition of law or fact.

Thus, a sheriff must determine whether process coming into his hands for service is issued by a court of competent jurisdiction and is regular on its face, and a treasurer of public money must ascertain whether a warrant for its pay-- ment is drawn by such an officer and is in such a form that its payment becomes a duty, but the execution of the process and the payment of the warrant are ministerial acts.

So that the existence of a necessity for the ascertainment,. from personal knowledge or other sources, of the facts or conditions upon which the performance of a duty becomes. clear and specific does not operate to convert the act into one judicial in its nature. Such, it is said, is not the judgment or discretion which is an essential element of judicial action.. *Mechem Pub. Off.* 658.

Whatever discretion exists, it is perceived, rests entirely with the abutting owners. If a majority of the owners of frontage wish the work done, and indicate their intention in the shape of a petition, that action is a finality.

The board is bound by the result so evidenced, and their conduct in recognizing the validity of such evidence is exactly the same as the conduct of a tax collector in recognizing that an assessment put in his hands was made by a legal assessor in a legal manner. The duty to proceed upon the evidence so produced is the same in both instances, and it is ministerial.

If the condition does not exist to support the attempted

performance of this duty, the remedy is by *certiorari*, in which the interested party has entire liberty to show this fact.

Again, the ministerial character of the duty of the board will appear by the application of another test.

It has been judicially remarked that a criterion of ministerial duty is to inquire whether it can be enforced by a writ of *mandamus.* This remark is accurate, for, under the well-settled rule that the writ will not go to command the execution of a duty resting within the discretion or judgment of an officer, the allowance of the writ settles the opinion of the court that the duty is ministerial.

Now, in at least two cases, neither, I think, reported, this court has commanded boards of chosen freeholders to proceed to cause public roads to be macadamized under the act of 1891. *Pamph. L., p.* 378. The duty in these cases sprung out of the fact that a petition of a certain proportion of the owners of lineal feet along the line of the road to be improved had been filed. The duty and the conditions upon which it rests are exactly alike in those cases and in this.

It may be remarked that the statement that no person can be affected in his property rights without an opportunity of being heard, is not accurate if regarded in the sense that a specific notice must be given and a hearing accorded to a person in each step of the proceeding which affects his property. An obvious illustration is afforded in the matter of the exercise of the right of eminent domain.

The state either directly fixes upon certain property of a citizen or confers the power upon a common council or a corporation to do so. No opportunity for a hearing is secured to him by the constitution as to whether his property shall be taken. His only constitutional right is to have a hearing in respect to the steps in the proceedings which are judicial, namely, in the assessments of the compensation. *Morris* v. *Comptroller*, 25 *Vroom* 268.

Indeed, in all the cases cited in which a notice was held essential for the purpose of affording an opportunity for a hearing, it will be found that the proceeding was *quasi*-judi-

cial. The body had a discretion as to whether it should act at all, or, if it was compelled to act, a discretion as to how it should proceed.

It would be absurd to provide for a hearing if the conduct of the body to be influenced is so rigidly fixed by law that there could be no possible divergence.

Indeed, the attack now made is logically narrowed to a challenge of the validity of the provision in the Cranford charter as being beyond the power of the legislature to enact. But it seems entirely clear that the legislature had the absolute power to direct the improvement to be made. It follows that it had power to direct it to be made upon the occurrence of a condition. The condition in this case was the petition of the owners of a majority of lineal feet of the abutting land.

Under this scheme the legislature acts directly—the board of commissioners are merely the instrument appointed to execute the legislative will.

It is only in instances where the direction of the improvement is delegated to the *quasi*-judicial discretion of a board or council that the question of notice legitimately arises.

The resolutions brought up are affirmed.