WILBERT LEE BALLARD *v.* BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF EVANSVILLE, INDIANA.

[No. 375S72. Filed March 24, 1975.]

*John D. Clouse,* of Evansville, for appellant.
*John C. Cox,* of Evansville, for appellee.

ARTERBURN, J.—We grant transfer in this case to consider whether or not that provision of the Police Pension Fund Act which permits the Board of Trustees of the Fund to discontinue the pension payments of a person convicted of a felony violates Art. 1, § 30 of the Indiana *Constitution* which reads: "No conviction shall work corruption of blood, or forfeiture of estate."

Plaintiff-appellant Ballard brought an action for restoration of his policeman's disability pension which had been terminated by defendant-appellee Board subsequent to Plaintiff's conviction of a felony. The trial court ruled in favor of the

appellee and Ballard appealed. The Court of Appeals, First District, found the statutory provision unconstitutional and directed the trial court to restore Ballard's pension, including benefits accumulated since termination. The Board petitioned for transfer.

The parties stipulated the following facts:

"1. The plaintiff, Wilbert Lee Ballard, was, prior to his retirement as set out hereinafter, a member of the Police Department of the City of Evansville, Indiana.

2. That the defendant, Board of Trustees of the Police Pension Fund of the City of Evansville, Indiana, is the legal entity charged with the ownership, trusteeship, and maintenance of the Police Pension Fund of the Police Department of the City of Evansville, Indiana.

3. That the plaintiff, Wilbert Lee Ballard, was permanently injured in an on-duty accident when serving with the Evansville Police Department, and, thereafter, in November of 1967, was retired from said department on a disability pension, administered by the Board of Trustees of the Pension Fund of the City of Evansville, Indiana.

4. That, thereafter, the said Wilbert Lee Ballard regularly drew said pension until the same was terminated and cancelled as set out hereinafter.

5. That on the 14th day of August, 1970, the said Wilbert Lee Ballard was convicted of second degree murder in the Superior Court for Pima County, Tucson, Arizona. That second degree murder is, and was at said time, a felony according to the laws of the State of Arizona.

6. That, thereafter, on August 16, 1970, the defendant Board of Trustees discontinued paying to the said Wilbert Lee Ballard his pension benefits solely because of said conviction." *Ballard* v. *Bd. of Trustees of Police Pension Fund of City of Evansville,* (1974) Ind. App., 313 N.E.2d 351 at 353.

The section of the Act which authorized the termination of pension benefits reads as follows:

"Whenever any person who shall have received any benefit from such fund shall be convicted of a felony or shall become an habitual drunkard or shall fail to report himself for duty or for examination, or otherwise shall fail to comply with any legal requirements imposed by the board

of trustees of the police pension fund, said board may upon notice to any such person discontinue or reduce in its discretion any payments that might otherwise accrue thereafter: Provided however, that nothing contained in this act [§§ 48-6401—48-6406] shall be construed to entitle said board to recall into service any member who has previously been retired from active service on account of having served twenty [20] years or more; nor shall anything in this act be construed to entitle a retired member to a pension after he shall have been convicted of a felony, or shall have become an habitual drunkard [Acts 1925, ch. 51, § 5, p. 167]." Ind. Code § 19-1-24-5, Burns § 48-6405 (1974 Supp.).

The pension fund comes from several sources, including gifts, proceeds from the sale of recovered property, penalties for violation of police rules, and "deductions" from salaries. A person choosing employment as a police officer is automatically under the pension fund provisions. Ind. Code § 19-1-24-2, Burns § 48-4602 (1974 Supp.). The Court of Appeals correctly held that in Indiana pensions under a state compulsory contribution plan like the Police Pension Fund have traditionally been considered gratuities from the sovereign involving no agreement of the parties and, therefore, creating no contractual rights. *Kern* v. *State ex rel. Bess,* (1937) 212 Ind. 611, 10 N.E.2d 915; *Klamm* v. *State ex rel. Carlson,* (1955) 235 Ind. 289, 126 N.E.2d 487. The involuntary plans are gratuities from the sovereign as distinguished from voluntary or optional pension plans, normally called "annuities," where there is an agreement that a deduction shall be made out of the salary of the employee. *Jensen* v. *Pritchard,* (1950) 120 Ind. App. 439, 90 N.E.2d 518. In a voluntary system the employee theoretically may keep his money or pay it back to the fund, while under the involuntary system the money, although denominated compensation, is never owned or controlled by the employee but retained by the state and is, therefore, in practical effect a contribution by the state. Under this theoretical distinction there is no vested right in the money residing in an involuntary or compulsory pension system. *Kern, supra; Klamm, supra.*

Nevertheless, the Court of Appeals relied on language from *Klamm, supra,* and held that in the instant case a vested interest existed. The passage from *Klamm, supra,* is as follows:

> "Where the statutory conditions for retirement existing when the application is made have been met, and the award of the pension has been made, or as of right should have been made, the pensioner's interest becomes vested and takes on the attributes of a contract, *which, in the absence of statutory reservations,* may not legally be diminished or otherwise adversely affected by subsequent legislation. Pennie v. Reis, 1889, 132 U.S. 464, 10 S. Ct. 149, 33 L. Ed. 426, supra; Freyermuth v. State ex rel. Pinter, 1939, 215 Ind. 693, 21 N.E.2d 707; Roddy v. Valentine, 1935, 268 N.Y. 228, 197 N.E. 260, supra; Klench v. Board of Pension Fund Commrs., 1926, 79 Cal. App. 171, 249 P. 46; State ex rel. v. Trustees, 1948, 149 Ohio St. 477, 79 N.E.2d 316; Id., 150 Ohio St. 377, 82 N.E.2d 743." (our emphasis) *Klamm, supra,* 126 N.E.2d 489.

We disagree with the interpretation which the Court of Appeals has given the *Klamm* case.

## I.

Considering the actual language used in *Klamm,* we see that the Court said that the pensioner's interest becomes "vested" *only* "in the absence of statutory reservations" and for the purpose of being "adversely affected by subsequent legislation." *Klamm, supra,* 235 Ind. at 292. In the instant case there were several statutory reservations, one of which was that Appellant not become convicted of a felony. Appellant's interest was subject to and conditioned by the terms of the legislation which created his interest at the time he took or received it in the first place.

The Appellant at the time of employment took the employment subject to statutory terms and conditions. He could have refused the proffered employment. We are involved here with a matter of legislative policy. The legislature could have made such a pension plan conditional

upon a number of factors and events; such as, age, marital status of named beneficiary, future income and employment, to mention only a few such factors. It could be argued all such terms or conditions provide for forfeiture. Here the legislature saw fit to provide for the termination of the pension fund payments upon the occurrence of certain events. Under the terms of the statute in question a policeman on disability pension may be recalled to perform certain duties. Ind. Code § 19-1-24-4, Burns § 48-6404 (1974 Supp.). Reasonable legislative policy here provided for a method of deterring criminal acts on the part of those who might be recalled into police service. Furthermore, the legislature could have thought that payment of a pension to a felon would undermine the morale of both the general public and the active police forces of the state. It seems to us that the policeman, a public employee, took the employment subject to the conditions which the legislature saw fit to impose for reasons of public policy. Statutes are clothed with a presumption of constitutionality. *Martin* v. *Ben Davis Conservancy Dist.*, (1958) 238 Ind. 502, 153 N.E.2d 125; *Conter* v. *Commercial Bank of Crown Point*, (1936) 209 Ind. 510, 199 N.E. 567; *Carr* v. *State*, (1911) 175 Ind. 241, 93 N.E. 1071. It does not behoove the judiciary to tell the legislature its policies are wrong.

Even if we were to adopt the contractual theory, it seems to us that what Appellant had upon his qualification for the pension was not an absolute right but a conditional or contingent right. In the language of real property, he had a vested right subject to divestment upon a *condition subsequent*. Upon his conviction for a felony, his right to future pension payments became divested.

Even if we assume that the pensioner had some financial interest, it was a right or interest subject to conditions. The right was not total or absolute, but limited. Therefore, the argument that a "forfeiture of estate" occurred is not valid since the estate or right of the pensioner was from the beginning limited. Appellant's "estate" consisted of only those

pension payments due him so long as he was not a convicted felon. We might have a different question if this pension plan had been amended, after the Appellant had become a member, to provide that he could lose his pension upon conviction for a felony. We do not have that question, and we do not answer that question at this time.

## II.

In addition, we believe that the termination of pension benefits by the Board of Trustees of the Police Pension Fund did not work a "forfeiture of estate" on Appellant within the constitutional meaning of that phrase. In the first place, the conviction, strictly speaking, did not provide for the forfeiture. The statute provides that the Board may in its discretion terminate or reduce pension payments to a policeman convicted of a felony. The Board could have reduced the amount of the payments or left the payments intact. Ind. Code § 19-1-24-5, Burns § 48-6405 (1974 Supp.). We think that Art. 1, § 30 of the *Constitution* prohibits the *automatic* forfeiture to the State of property upon conviction. Secondly, there is a real question as to whether or not a termination of pension payments is even a "forfeiture." "Forfeiture of estate" clauses were placed in some of the state constitutions. 16 Am. Jur.2d. *Constitutional Law* § 411 (1964) ; 10 ALR 1591 (1921). They were a response to the common law practice of attainder. After sentence, the offender, by operation of law, was placed in a state of attainder. 1 Chit. *Crim. Law* 723 (1841). "The consequences of attainder are forfeiture and corruption of blood." 4 Wendell's Blackstone's *Commentaries* 380 (1852). Forfeiture was a part of the punishment of the crime whereby the goods and chattels, lands and tenements (estate) of the attainted felon were forfeited to the king ; the personalty absolutely on conviction and the realty on sentence being pronounced. The attainted person was not divested of his lands automatically on conviction, but it required a subsequent proceeding. *Avery* v. *Everett,* (1888) 110 N.Y. 317, 18 N.E.

148 (N.Y. Ct. of Appeals). Thus, an attainted person could devise or demise his lands subject only to the king's right of entry. In other words, an attainted person held title good as to all except the sovereign. *Avery, supra.* Forfeiture was, then, like the even more ancient practice of deodand, a source of revenue for the king. "Almost all criminal justice was gradually being claimed for the king; such justice was a profitable source of revenue, of forfeitures, fines and amendments." F. Maitland, *The Forms of Action at Ancient Common Law* 12 (1936).

So, at common law forfeiture was understood to be the transfer of title of a specific res from the owner to the sovereign power. *Commonwealth* v. *Avery,* (1879) 77 Ky. 625, 29 A.R. 429. Thus, it seems that a fine as a penalty for a criminal conviction is not a "forfeiture of estate" since a fine is a fungible thing. The term "estate" ordinarily means the whole of the property owned, the realty as well as the personalty. Black's *Law Dictionary,* 4th Ed. (1951). And this was what was lost by common-law forfeiture—the whole estate; whereas a fine, like a pension payment, being merely one fungible and pre-determined amount is not an "estate" of the convicted felon in its historical sense.

For all of the foregoing reasons, we find that the Police Pension Act does not violate our constitutional provision against forfeiture of estate. We grant transfer, vacate the opinion and judgment of the Court of Appeals, and reinstate the judgment of the trial court.

All justices concur.

NOTE.—Reported at 324 N.E.2d 813.