OTTO KERNER, by Anton Kerner, his representative, Plaintiff-Appellee, *v.* STATE EMPLOYEES' RETIREMENT SYSTEM *et al.*, Defendants-Appellants.

Fourth District No. 14306

Opinion filed October 21, 1977.

William J. Scott, Attorney General, of Chicago (Mary F. Stafford, Assistant Attorney General, of counsel), for appellants.

Robert Weiner, of Springfield, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal involves the State pension rights of the late Otto Kerner, one-time governor of Illinois.

The essential facts are not in serious dispute. On September 28, 1965, Otto Kerner (herein for convenience referred to as "Kerner"), then Governor of Illinois, applied for membership in the State Employees' Retirement System (herein "System"). Under an option then existing, Kerner paid into the System $11,048.34, which included 4% compound interest, and obtained service credits retroactively to the date of his taking office, *viz.*, January 9, 1961.

On May 19, 1968, Kerner resigned as Governor to become a judge of the United States Court of Appeals for the Seventh Circuit, and on May 2, 1969, applied for a retirement allowance. On June 16, 1969, the System granted the allowance retroactively to January 19, 1969, by paying $1,534.88, and thereafter monthly allowances of $335.08 each, through June 1973. At the time of the initial payment Kerner was notified that his contributions to the System, excluding interest, totalled $16,815.71. Payments were stopped commencing with the month of July 1973; three additional payments were made at various times thereafter, and Kerner's total payments from the System are agreed to be $18,927.82.

Kerner was convicted of one or more felonies under the United States Code in the United States District Court for the Northern District of Illinois, Eastern Division. These convictions were affirmed on appeal. They related to Kerner's service as an employee of the State of Illinois.

On October 3, 1975, Kerner filed a demand with the System for resumption of payments. A hearing was convened before a hearing officer, who rendered his decision on April 26, 1976, recommending such resumption. On May 3 and 5, 1976, the board of trustees of the System reviewed the hearing officer's report, held further hearings and overruled the hearing officer.

Kerner died in May 1976, and his representative filed an administrative review proceeding in the circuit court of Sangamon County, asking in effect that the finding of the System be reversed and Kerner's estate be awarded payments from July 1973, through May 1976, totalling $9,382.24. The circuit court reversed the System and this appeal ensued.

Fundamental and central to the solution of the problem presented is the construction of section 14—199 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 14—199). Equally fundamental is the effect, if any, upon section 14—199 of article XIII, section 5, of the Illinois Constitution of 1970.

The statutory section in question, section 14—199, reads as follows:

"None of the benefits herein provided for shall be paid to any

person who is convicted of any felony relating to or arising out of or in connection with his service as an employee.

This section shall not operate to impair any contract or vested right heretofore acquired under any law or laws continued in this Article nor to preclude the right to a refund.

All future entrants entering service subsequent to July 9, 1955 shall be deemed to have consented to the provisions of this section as a condition of coverage." Ill. Rev. Stat. 1975, ch. 108½, par. 14—199.

This provision first appeared in 1955 as paragraph 216.2 of chapter 127, Ill. Rev. Stat., and became effective July 9, 1955. In 1963 the legislature codified various pension plans into what is now chapter 108½, Ill. Rev. Stat., and the section was incorporated therein without change except to add to it the words, "subsequent to July 9, 1955."

■■ Before proceeding further, we must lay to rest one matter raised in the briefs. Kerner's brief spends a considerable amount of time and space arguing the proposition that a pension is a contractual right, not a bounty. This is conceded by the System. Some early cases, decided when pension plans were much less common than today, contain language which at least look in the direction of bounty or grace-and-favor, alterable at the will of the sovereign. More recent authority has totally rejected such thinking and pensions are now acknowledged to be contractual in nature. (See *Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 296 N.E.2d 721.) Kerner's pension was a contract right and became vested in 1969 when the System granted him an allowance. The actual date of vesting is of little importance since the statute in question was in force at all times since 1955.

In construing the statute the trial court held that until retirement an employee's rights were inchoate, but upon actual retirement such rights became vested. The court read the words "heretofore acquired" in paragraph 2 of section 14—199 of the Pension Code as relating to the date of retirement. Such a construction totally ignores the impact of paragraph 3.

A reading of the statute as passed in 1955 and a further reading of it as amended in 1963 demonstrate clearly that the legislature intended a change in the pension contract for those retiring after July 9, 1955. Paragraph 2 is, in effect, a saving clause and acknowledges that the legislature could not constitutionally impair a previously acquired contract right. "Heretofore" in the 1955 act could only refer by logic and grammar to a time prior to July 9, 1955; all "future entrants" (*i.e.*, those after July 9, 1955) are deemed to have consented to the felony divestiture provision as part of the pension contract. The amendment of 1963 further underscores the importance of the date.

The legislative intent is clear: Rights acquired prior to July 9, 1955, could not be divested or impaired and no effort was made to do so; rights acquired after July 9, 1955, could be divested, since the felony conviction condition became part of the pension contract. It is a prime example of a condition subsequent, a familiar feature of contract law.

To pursue the theory of the trial court to its logical conclusion, all an employee need do is to conceal his criminal activity until after retirement and thus render the entire statute meaningless.

In *Peterson v. Board of Trustees*, 54 Ill. 2d 260, 264-65, 296 N.E.2d 721, the court said:

> "The language of the Code is clear and there is no need for this court to construe it so as to give it any meaning other than the one which is clearly stated. It is the duty of the court to enforce the law as enacted according to its plain and unmistakable provisions. [Citation.] The legislature could have provided pensions for fire fighters or other full-time appointed employees of the fire department who are no longer capable of performing the duties of their positions because of physical incapacity. It did not do so. We cannot now alter the plain language of the statute and through judicial construction incorporate such a provision in the Code. [Citation.]"

■■ The doctrine applies with force to the case at bar. The statute is plain and clear: Those acquiring pension rights prior to July 9, 1955, may not have them divested by conviction of a felony; those acquiring pension rights after July 9, 1955, forfeit such rights upon such conviction. Any other interpretation tortures the statutes and contorts it into an unrecognizable melange. The trial court was in error in its construction.

Since we have decided that the trial court misconstrued the statute, we must next consider the meaning of "any felony." The trial court found that the felonies of which Kerner was convicted were within the ambit of the statute. The System asserts that since no cross-appeal was taken from this finding, the matter is not properly before this court. *Village of Arlington Heights v. National Bank of Austin* (1977), 53 Ill. App. 3d 917, 369 N.E.2d 502, holds that a specific negative finding below against an appellee is not before an appellate court unless cross-appealed. However, in view of our finding that the trial court erred in construing "heretofore acquired," we must examine the other proposition because, should we also find error in construing "any felony," and find that the felonies involved here are not within the ambit of the statute, the decision of the trial court could be upheld, although not its reasoning.

Since this appears to be a case of first impression, we have no direct precedents to aid us. Kerner lays emphasis on an unpublished opinion of the Attorney General of Illinois to the Director of the Department of

Registration and Education under date of February 15, 1966. The subsequent history of that opinion is detailed in *Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6, 319 N.E.2d 37, *cert. denied* (1975), 421 U.S. 914, 43 L. Ed. 2d 780, 95 S. Ct. 1573. The Attorney General narrowly construed the meaning of "conviction of a felony" in the Medical Practice Act. The legislature responded at its next session by broadening the meaning. The supreme court held that where a court (or the Attorney General by analogy) construes the terms of a statute and the legislature thereafter defines those terms, the decision is presumptively not in accordance with the intent of the legislature.

We are not so presumptuous as to say what the legislature might do in the event we should narrowly construe "any felony" in the case at bar, but the career of the General's opinion of February 15, 1966, is at least *prima facie* evidence that such an opinion would be destined for short tenure.

We are of the opinion that the principal purpose of the statute is to penalize work-related felonies. The structure of government has become so complex in recent times and the functions of State, Federal and local governments so intertwined and enmeshed as to make the Cretan labyrinth look like an interstate highway. The proliferation of Federal laws, offenses and punishments is a matter of common knowledge and is so extensive that the hoary aphorism of "the Federal case" has lost its meaning. The plain meaning of the statute relates to felonies "relating to or arising out of or in connection with" service, not as against any particular sovereign. It does not strain credulity to envision that, given the nature of the Federal intrusion into State affairs, most of the felonies likely to arise under the statute will be Federal in nature.

■■ We are further persuaded that "any felony" as used in the statute includes Federal offenses by the specific holding in *Bruni* wherein a Federal felony which was only a misdemeanor under State law was held to be a felony under the Medical Practice Act.

The trial court was correct in holding that Kerner's offenses were felonies under section 14—199 of the Pension Code.

We turn next to the principal constitutional question raised in this appeal. After making its interpretation of the statute as detailed above, the trial court then further found that if its interpretation were in error, then the statute was unconstitutional as to Kerner in that it "divests or diminishes or impairs a vested interest." While the order of the trial court refers to both the Constitution of the United States and the Constitution of the State of Illinois, we believe that the main emphasis was on the Illinois Constitution of 1970 which provides in article XIII, section 5:

> "Membership in any pension or retirement system of the State, or any unit of local government or school district, or any agency or

instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

This section is new, the 1870 Constitution having contained no similar provision. Furthermore, the section was offered from the floor in the Constitutional Convention and hence we do not have the benefit of reports from which to glean the intent of the framers. However, the record of proceedings of the Convention sheds some light on the matter.

The delegates were concerned that there should be adequate funding of State and local pension systems (4 Record of Proceedings, Sixth Illinois Constitutional Convention 2926-27). In connection with that debate, delegate Kinney, a co-sponsor of the provision, stated:

"MRS. KINNEY: Thank you. Mr. Green and I did discuss the term 'vesting' with Mr. Kanter, the counsel to the Committee on Style and Drafting, and we thought that it would be quite fair if a person undertook employment under a statute that provided for a contingency for lowering the benefits at some future time, that this was, indeed, the contract that he had accepted. All we are seeking to do is to guarantee that people will have the rights that were in force at the time they entered into the agreement to become an employee, and as Mr. Green has said, if the benefits are $100 a month in 1971, they should be not less than $100 a month in 1990." (4 Record of Proceedings, Sixth Illinois Constitutional Convention 2931-32.)

It is thus apparent that the framers recognized circumstances under which a pension might be reduced, and by extension of reasoning, divested altogether.

The hearing officer cited *Ballard v. Board of Trustees* (1974), ___ Ind. App. ___, 313 N.E.2d 351, and as basis for his decision, and while not citing it specifically, the trial court's decision appears to adopt its rationale. By way of supplemental authority filed by the System we are informed that the Indiana Supreme Court has overruled its appellate court in the *Ballard* case. (*Ballard v. Board of Trustees* (1975), 263 Ind. 79, 324 N.E.2d 813, *appeal dismissed* (1975), 423 U.S. 806, 46 L. Ed. 2d 27, 96 S. Ct. 15.) The Indiana court, while seeming to hold the pension as a gratuity, held that even if a contractual theory were adopted, nevertheless such pension was subject to statutory reservations and could be divested. The appellate court decision in *Ballard* is inapposite.

Kerner also relies on *Leonard v. City of Seattle* (1972), 81 Wash. 2d 479, 503 P.2d 741. Apart from the fact that the Washington statute is distinguishable from the Illinois, the facts reveal that the felony was committed some four years after retirement. The Washington court held

that the felony did not occur in the course of the employee's duties and hence the pension could not be terminated. *Leonard* is likewise unpersuasive here.

■■ Article XIII, section 5, is largely derived from the New York Constitution of 1940 and the Illinois Supreme Court has looked to the decisions of that State in construing the provision in question here. (*Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 311 N.E.2d 107.) We may therefore look to New York for guidance.

In *Holz v. Kowal* (1967), 27 App. Div. 2d 128, 276 N.Y.S.2d 398, a situation analogous to the case at bar arose. The New York pension law had for a long time prohibited a pensioner from taking certain types of public employment and still continue to draw his allowance. One such pensioner sued and claimed that such prohibition was unconstitutional under the section similar to Illinois' article XIII, section 5. The court held that the prohibition antedated the constitutional provision and continued thereafter, and hence was not affected by the adoption of the 1940 Constitution.

The instant case is strikingly similar. When Kerner entered the System, the felony provision was in existence as part of the pension contract. The adoption of the 1970 Constitution could not impair any obligations nor remove any disabilities existing in that contract.

■■ We hold that the adoption of article XIII, section 5, of the Constitution of 1970 neither abrogated nor modified section 14—199 of the Illinois Pension Code.

■■ Kerner also makes several claims under the Constitution of the United States which we shall consider briefly. First, that the denial of pensions rights is cruel and unusual punishment under amendment VIII. This right has been everywhere held to apply to criminal, not civil proceedings. (See *Robbins v. Police Pension Fund* (S.D.N.Y. 1973), 321 F. Supp. 93.) It has no relevancy here. Second, that the denial was an *ex post facto* law in violation of article I, sections 9 and 10 of the United States Constitution and article I, section 16, of the Illinois Constitution of 1970. The claim has no merit since the statute had been in existence nearly six years before Kerner's employment commenced in 1961. Third, Kerner claims lack of due process but cites no authority for the proposition. The claim is untenable. Procedurally he was granted adequate hearing and review. Substantively it is uncontested that he was entitled to a refund of all contributions over what he had paid in. Fourth, claim is made under article I, section 11, of the Illinois Constitution of 1970, concerning corruption of blood or forfeiture of estate. It is likewise groundless; no estate was forfeited, only a right to continued pension benefits by reason of his actions. The corruption cases turn generally on a question of whether the individual enlarges his own estate or profits from his own

wrong. Neither is present here. The System urges that Kerner should not be rewarded for his bad acts. This is in the nature of some pious moralizing and has no persuasiveness in view of the specific language of section 14—199.

The additional constitutional claims are without foundation.

■■ Finally, Kerner claims that the action of the System was *ultra vires*. The contention appears to ground itself on an allegation that the board of trustees had no chairman and held no meetings between May 1973, and June 1974. Under the authority of *Arlington Heights v. National Bank of Austin* (1977), 53 Ill. App. 3d 917, 369 N.E.2d 502, we consider the matter waived. In any event, Kerner never requested a hearing or a final decision until the filing of his claim for reinstatement in 1975. The final decision was made by a duly constituted board after a full hearing. Kerner fails to demonstrate in what manner he was prejudiced by the procedures employed by the board.

The briefs discuss the question of interest on the claim. In view of the disposition which we make of the case, the question becomes moot.

The decision of the circuit court of Sangamon County is reversed.

Reversed.

GREEN, P. J., and REARDON, J., concur.