396 S.E.2d 725

### WEST VIRGINIA PUBLIC EMPLOYEES RETIREMENT SYSTEM

v.

### Charles H. DODD.

### No. 19205.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

David R. Janes, Tharp, Liotta & Janes, Fairmont, for Charles H. Dodd.

Roger W. Tompkins, Atty. Gen. and Thomas J. Gillooly, Sr. Deputy Atty. Gen., Charleston, for West Virginia Public Employees Retirement System.

McHUGH, Justice:

This appeal from a final order of the Circuit Court of Kanawha County, West Virginia, raises issues concerning the forfeiture of public retirement plan benefits as the result of certain misconduct. We believe the circuit court ruled correctly on the main issue, specifically, that the appellant had forfeited his public pension due to "less than honorable service." This Court therefore affirms the circuit court's final order, for the reasons set forth herein.

I

The appellant, Charles H. Dodd, the respondent below, was born in December, 1920, and was employed in public service in this state continuously from 1951 through 1985. From 1951 to 1971, he was a deputy

sheriff of Marion County, West Virginia, including many years as chief deputy sheriff. From 1971 through 1980, he was the clerk of the circuit court of Marion County. From 1981 until his resignation in December, 1985, he was the sheriff of Marion County. The appellant was a member of the West Virginia Public Employees Retirement System ("PERS") from its inception in July, 1961; in addition, he had thirteen years of prior, noncontributing service credit under PERS.

In anticipation of his retirement, the appellant, in November, 1985, applied to PERS for a retirement pension of about $1,800 per month. In May, 1986, the appellant entered a plea of guilty, in the United States District Court for the Northern District of West Virginia, to an information charging him with the felony of interference with commerce under color of official right, in violation of 18 *U.S.C.* § 1951, as amended (popularly known as "the Hobbs Act"). This criminal plea related to the appellant's having accepted $200 to $500 on

each of at least two, and as many as six, occasions between April and December, 1981, in exchange for his not enforcing anti-gambling laws against a certain gambling establishment operating illegally in Marion County. For this felony conviction the appellant was fined $3,000 and was placed on probation for three years.

In June, 1986, PERS, the petitioner below and the appellee here, notified the appellant, pursuant to *W.Va.Code*, 5–10A–3 [1976], that he was not eligible to receive the requested retirement pension because his aforestated felony conviction, based upon conduct related to, and committed while holding, his office, caused his public service to be "less than honorable service," within the meaning of *W.Va.Code*, 5–10A–2(e)(2) [1976].[1] Pursuant to *W.Va.Code*, 5–10A–4 [1976], the appellant timely demanded that the appellee seek a determination in circuit court of the appellant's ineligibility for the pension due to less than honorable service.[2] In October, 1986,

---

1. *W.Va.Code*, 5–10A–3 [1976] provides, among other things, that the board of trustees of PERS, upon obtaining reasonable cause to believe that a participant in PERS rendered less than honorable service, shall, no later than one year after a final judgment of conviction for *conduct occurring on or after the effective date of the statute, March 13, 1976,* notify the affected participant or beneficiary that it believes that the participant rendered less than honorable service, as defined in *W.Va.Code*, 5–10A–2 [1976]. The notice shall contain a concise statement of the reasons why the board believes that the participant rendered less than honorable service. Section 3 sets forth the manner of service of such notice.

Section 3 also provides that the notice shall inform the participant or the beneficiary that he or she has the right to demand that the board seek a determination in circuit court of his or her eligibility for benefits by notifying the board of such demand within forty days.

Section 3 further provides that the notice shall inform the participant or beneficiary that the board will terminate the benefits in accordance with section 4 and refund the participant's contributions, with interest, less any benefits previously paid, as provided in section 6, if the participant or beneficiary either waives the right to demand that the board take the matter before the circuit court or fails to respond to the board's notice within forty days after service.

*W.Va.Code*, 5–10A–2(e)(2) [1976] defines the most common type of "less than honorable service"—and the type applicable here—as "[c]on-

viction of a participant of a felony for conduct related to his [or her] office or employment which he [or she] committed while holding such office or during such employment[.]"

Other types of "less than honorable service" are set forth in paragraphs (1) and (3) of *W.Va. Code*, 5–10A–2(e): conduct or omissions resulting in impeachment and conviction, except for a misdemeanor, and conduct falling within paragraphs (1) or (2) but for which the participant was not convicted for reasons delineated in paragraph (3) of *W.Va.Code*, 5–10A–2(e).

2. *W.Va.Code*, 5–10A–4 [1976] provides:

If a participant or beneficiary informs the supervisory board [here the board of trustees of PERS] within forty days after service of the notice provided for in section three of this article that he [or she] demands that the board seek a determination in circuit court, the board shall forthwith file a petition in the circuit court in the county in which the board is located or in which the participant or beneficiary resides, seeking that the court determine that the participant rendered less than honorable service as defined in section two of this article and that the affected participant or beneficiary is thereby ineligible to receive benefits.

Jurisdiction is hereby conferred on circuit courts to make such determinations.

Upon the filing of such a petition by a supervisory board, the circuit court shall give such notice and opportunity to be heard to the

PERS filed a petition seeking such a determination.[3]

Immediately after conducting an evidentiary hearing in November, 1986, the Circuit Court of Kanawha County ruled orally that the appellant's public service was "less than honorable service." A letter memorandum of opinion was not furnished until November, 1987, and a "final order" incorporating the memorandum of opinion was not entered until November 2, 1988.[4]

## II

■ The appellant argues before us, as he did before the circuit court, that he should be denied only the portion of the pension for the period after 1980, during which he had committed the felony and had concealed it. We disagree.

*W. Va. Code*, 5–10A–1 [1976] sets forth, in clear terms, the legislative findings and declarations with respect to the Act on the "Disqualification for Public Retirement Plan Benefits," *W. Va. Code*, 5–10A–1 to 5–10A–10 [1976] ("the Act"):

> The Legislature finds and declares that every retirement plan instituted and created under the laws of this state has from the inception thereof contemplated and each now contemplates that the service rendered by any participating public officer or employee shall *at all times* be honorable. The Legislature further finds and declares that honorable service is a condition to receiving any pension, annuity, disability payment or any other benefit under a retirement plan.

(emphasis added) That the legislative intent under the Act is for the public service to be honorable "at all times" is also indicated by the clear language of *W. Va. Code*, 5–10A–9 [1976], which provides, in relevant part, that the right to receive any public retirement plan benefit is conditioned upon the rendering of honorable service *"throughout* the service in public employment or public office[.]" (emphasis added)[5]

The Act's insistence upon honorable service by a public officer or a public employee as a condition precedent to receiving a public retirement plan benefit is declarative

---

> affected parties as are consistent with the demands of due process and necessary for a fair determination of the matter. Upon completion of its hearings the court shall make such findings of fact and conclusions of law as are appropriate. Except in the case of exigent circumstances, *the court shall make its determination within sixty days of the filing of the petition by the board.*
> A determination of the circuit court shall be a final order which may be appealed to the supreme court of appeals in the same manner as decisions in other civil actions.

(emphasis added)

3. PERS had terminated the appellant's pension in September, 1986.

4. At the conclusion of the hearing in November, 1986, the circuit court reserved ruling on the question of whether PERS may terminate pension benefits pending the determination of a circuit court on the question of whether there was "less than honorable service." In its letter memorandum of opinion in November, 1987, and in its final order of November 2, 1988, the circuit court ruled that PERS may terminate pension benefits pending the "less than honorable service" determination. PERS now concedes that this ruling was erroneous. *See W. Va. Code,* 5–10A–5(a) [1976].

Nonetheless, the appellant may not be heard on this point, for he did not pursue a prompt,

final determination by the circuit court. *Cf.* syl. pt. 3, *Maynard v. Board of Education,* 178 W.Va. 53, 357 S.E.2d 246 (1987) (party must exercise due diligence in a matter involving public interest; failure to do so constitutes laches).

5. Prior to enactment in 1976 of the separate Act on disqualification for public retirement plan benefits, the West Virginia Public Employees Retirement Act itself contained a similar provision, *W. Va. Code,* 5–10–49 [1963], on ineligibility of a public officer for public retirement plan benefits as a result of certain misconduct:

> Any member of the retirement system who has been removed from office or his office shall have been vacated for official misconduct, incompetence, neglect of duty, gross immorality, malfeasance, or misfeasance shall immediately have his membership in the retirement system terminated permanently by the board of trustees and shall never become eligible for an annuity; however, any such member so terminated by virtue of this section shall be entitled to a refund of his contributions with regular interest as provided in section thirty hereof.

*W. Va. Code,* 5–10A–6 [1976] similarly provides for a refund of the contributions of a participant disqualified under the Act, plus interest, less the amount of any benefits which the participant or his or her beneficiaries have previously received.

of the preexistent common law in this state. For example, syllabus point 3, in material part, of *State ex rel. Fox v. Board of Trustees*, 148 W.Va. 369, 135 S.E.2d 262 (1964), states that a public pension statute necessarily implies that the public service must be honorable: "Though the statute does not expressly mention the kind of service required of a member of a municipal police department to entitle him to a pension, it is necessarily implied that the service rendered must be honorable service[.]" *See also Cawley v. Board of Trustees*, 138 W.Va. 571, 581, 76 S.E.2d 683, 689 (1953) (where statutory conditions for retirement have been met, right to public pension becomes vested "in the absence of fault" on the part of public officer or public employee).

Quoting *Fromm v. Board of Directors*, 81 N.J.Super. 138, 143, 195 A.2d 32, 34 (App.Div.1963), which, in turn, paraphrased *Plunkett v. Board of Pension Commissioners*, 113 N.J.L. 230, 233, 173 A. 923, 924 (Sup.Ct.1934), *aff'd*, 114 N.J.L. 273, 176 A. 341 (Ct.Err. & App.1935), this Court in *Fox*, 148 W.Va. at 378, 135 S.E.2d at 267, observed that, even without an express statutory requirement of honorable public service, " '[i]t is, of course, axiomatic that one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service.' " In other words, public service, compensated at public expense, is a public trust and necessarily implies faithful service. *See W.Va. Const.* art. III, § 2. This concept was discussed in, for example, *Makwinski v. State Board of Commissioners*, 76 N.J. 87, 90, 385 A.2d 1227, 1229 (1978), where the court remarked that a public pension is an inducement to conscientious and efficient public service, which

inducement would be immeasurably lessened if the public officer or public employee was entitled to assert an indefeasible claim to a public pension simply because that officer's or employee's dishonorable conduct occurred after the officer or employee had served the statutorily required minimum number of years of service. *See also Makwinski*, 76 N.J. 87, 93, 385 A.2d 1227, 1231 (Pashman, J., concurring) (paramount importance of public officers or public employees acting honorably in accordance with public trust placed in them is self-evident; dishonorable service requires total forfeiture of public pension, even one which has otherwise "vested" after many years of service).

Furthermore, at common law, as under *W.Va. Code*, 5–10A–1 to 5–10A–10 [1976], a public officer's or public employee's service must be honorable at all times, and if not, there is a total forfeiture of the public pension. In *Fox*, the misconduct occurred in sixteen out of twenty-five years. This Court upheld a total forfeiture of the public pension, and did not prorate the forfeiture so as to eliminate service credit for the pension only for the sixteen years of dishonorable service. "The requirement of honorable service has been held to continue during the entire period of active service." *Makwinski*, 76 N.J. at 90, 385 A.2d at 1229. *See also Plunkett*, 113 N.J.L. at 234, 173 A. at 924 ("an essential prerequisite [to eligibility for a public pension] is honorable service without limit as to time").[6]

■ A case from another jurisdiction which is nearly on all fours with the case now before us is *Kerner v. State Employees' Retirement System*, 72 Ill.2d 507, 21 Ill.Dec. 879, 382 N.E.2d 243 (1978), *aff'g* 53 Ill.App.3d 747, 11 Ill.Dec. 510, 368 N.E.2d 1118 (1977), *cert. denied*, 441 U.S. 923, 99

**6.** The companion cases of *Uricoli v. Board of Trustees*, 91 N.J. 62, 449 A.2d 1267 (1982), and *Eyers v. State Board of Trustees*, 91 N.J. 51, 449 A.2d 1261 (1982), both prorating the public pension forfeiture so as to eliminate service credit for the dishonorable period of time only, are materially distinguishable. In those two cases, the court, which was divided 4–3, reached its result primarily because there was no clear legislative expression requiring total forfeiture of a public pension for proscribed misconduct. As discussed previously, however, the legislature in the State of West Virginia has clearly required forfeiture of public retirement plan benefits unless there was honorable service "at all times" during or "throughout" the public service. *W.Va.Code*, 5–10A–1 [1976], 5–10A–9 [1976]. We also note that *Uricoli* and *Eyers* do not expressly overrule *Makwinski*, which required *total* forfeiture for *dishonorable* service. Moreover, *Makwinski* is consistent with the common law and the Act in this jurisdiction.

S.Ct. 2032, 60 L.Ed.2d 397 (1979), involving the forfeiture of the state pension rights of the late federal judge and former governor of the State of Illinois, Otto Kerner, on account of federal felony convictions relating to Judge Kerner's service as governor. The statute in that case disqualified a public employee from receiving a pension if convicted of any felony relating to or arising out of or in connection with service as a public employee. The statute was in effect prior to the conduct leading to the felony convictions.[7] The forfeiture was upheld. The intermediate appellate court of Illinois and the Supreme Court of Illinois rejected the claims that the public pension forfeiture statute was unconstitutional as an impairment of contract, as an *ex post facto* law, as a forfeiture of estate for a conviction, as cruel and unusual (disproportionate) punishment or as a denial of substantive due process.

The offenses in *Kerner* were committed during the public employee's public service,

but the convictions were not obtained until after the effective date of the retirement, which is also the case here. The courts in *Kerner* refused to allow the former public employee to evade the public pension forfeiture statute by claiming indefeasible "vesting" upon retirement before *conviction.* They concluded that a contrary ruling would allow the public employee to conceal the criminal activity until after retirement and thus render the statute meaningless. We agree.[8]

Similar to the claims in *Kerner,* the former public servant in the case now before this Court claims that the public pension forfeiture statute, *W. Va. Code,* 5–10A–1 to 5–10A–10 [1976], is unconstitutional as cruel and unusual (disproportionate) punishment, as a bill of attainder (bill of pain and penalties), as an impairment of contract, as a deprivation of property without due process of law or as a forfeiture of estate.[9] We, like the courts in *Kerner,* conclude that these claims are without merit.

---

**7.** In *Kerner,* the public pension forfeiture statute was also in effect prior to the time the public service commenced. In the present case, the common-law public pension forfeiture principle was in effect prior to the time the appellant was initially hired by a public employer. In addition, the Act was in effect for nearly five years prior to the time (January, 1981) when the appellant commenced service as sheriff, the public service to which the subsequent felony conviction related. *See Shiomos v. Commonwealth, State Employes' Retirement Board,* 132 Pa. Commw. 379, 381, 572 A.2d 1311, 1313 (1990) (by running for and accepting an additional term of office, judge entered into new contract for retirement benefits, which included as one of its terms the new pension forfeiture provisions; forfeiture provisions apply to all retirement benefits because all prior contributions were, in effect, rolled over into fund created under new contract; thus, there was no constitutional impairment of contract). In any event, the key timing question is whether the Act predated the conduct leading to the felony conviction, which is the case here.

**8.** As mentioned in note 1 *supra, W. Va. Code,* 5–10A–3 [1976] requires notification of intent to terminate the public retirement plan benefits no later than one year after a felony conviction which has become final for conduct occurring on or after March 13, 1976 (the effective date of the Act), and which conduct related to and was committed while holding public office or public employment. While the offense must have been *committed* during the public service, the person

need not be serving as a public officer or public employee at the time of *conviction,* according to *W. Va. Code,* 5–10A–2(d) [1976] (defining "conviction").

**9.** The cruel and unusual (disproportionate) punishment claim is based upon article III, section 5 of the *Constitution of West Virginia,* which prohibits the infliction of "cruel and unusual punishment," and which requires that "[p]enalties shall be proportioned to the character and degree of the offence." *See also U.S. Const.* amend. VIII.

The bill of attainder (bill of pain and penalties) and contract impairment claims are based upon article III, section 4 of the *Constitution of West Virginia,* which provides that "[n]o bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed." *See also U.S. Const.* art. I, § 10.

The due process claim is based upon article III, § 10 of the *Constitution of West Virginia:* "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." *See also U.S. Const.* amend. XIV, § 1.

The forfeiture of estate claim is based upon article III, section 18 of the *Constitution of West Virginia:* "No conviction shall work corruption of blood or forfeiture of estate." *Cf. U.S. Const.* art. III, § 3 (congress shall not provide that treason works corruption of blood or forfeiture except during life of person attainted of treason).

▉ The appellant does not cite, and our research has not revealed, any precedent supporting his argument that the Act provides for cruel and unusual (disproportionate) punishment. While the forfeiture of the pension is penal in nature, we are not inclined, in the absence of supporting authorities, to hold that a total forfeiture, as opposed to a forfeiture only for the period of dishonorable service, is unconstitutionally disproportionate, especially where, as here, the forfeiture is triggered by a felony conviction for conduct which constitutes a fundamental breach of the public trust, specifically, the failure of a law enforcement officer to enforce the law, in exchange for benefits furnished by those individuals violating the law. Our decision that the Act does not provide for cruel and unusual, or disproportionate, punishment is supported by the guiding principles set forth in syllabus point 1 of *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965):

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

*Accord, State ex rel. Hughes v. Board of Education*, 154 W.Va. 107, 116–17, 174 S.E.2d 711, 717 (1970), *appeal dismissed for want of jurisdiction and cert. denied*, 403 U.S. 944, 91 S.Ct. 2274, 29 L.Ed.2d 854 (1971), *and overruled on another point*, syl. pt. 2, *Janasiewicz v. Board of Education*, 171 W.Va. 423, 299 S.E.2d 34 (1982); syl. pt. 3, *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969).

▉ The bill of attainder (or bill of pain and penalties) claim is invalid because the 1976 Act was not a legislative determination of guilt for past acts of certain individuals. *See Baker v. Civil Service Commission*, 161 W.Va. 666, 676–78, 245 S.E.2d 908, 913–15 (1978). By its terms the Act applies only to proscribed conduct of any public officer or public employee occurring on or after the effective date of the Act, March 13, 1976. The conduct in question here occurred in 1981. Similarly, the Act, affecting only future conduct, does not constitute impermissible *ex post facto* legislation.

▉ With respect to the contract impairment claim, this Court has held that "[r]etired and active PERS plan participants have contractually vested property rights created by the pension statute, and such property rights are enforceable and [ordinarily] cannot [constitutionally] be impaired or diminished by the State." Syl. pt. 16, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988), *reh'g granted and opinion modified*, Mar. 17, 1989.[10] However, it is significant that in a contributory pension plan, such as the PERS plan, "the pensioners' right[s] vest [only] when *all* the conditions entitling them thereto have been fulfilled." *Wagoner v. Gainer*, 167 W.Va. 139, 146, 279 S.E.2d 636, 641 (1981) (emphasis added). *W.Va.Code*, 5–10A–1 [1976], quoted at the outset of this section (section II) of this opinion, and the preexistent common law, such as *State ex rel. Fox v. Board of Trustees*, 148 W.Va. 369, 135 S.E.2d 262 (1964), discussed above, require honorable service at all times during the public service as a condition to receiving a public retirement plan benefit. This condition has not been fulfilled in this case, and, therefore, the appellant's pension rights

---

**10.** Reasonably necessary, prospective modifications of the PERS pension plan may be made to serve important public purposes. Syl. pts. 17–18, *id. See also* syl. pt. 4, *Shell v. Metropolitan Life Insurance Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989).

never fully vested. The first step in determining whether an impermissible contract impairment has occurred is to ascertain whether there has been a substantial impairment of contract rights, syl. pt. 4, *Shell v. Metropolitan Life Insurance Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989), and there can be no impairment when, as here, the contract rights never fully vested because the condition of honorable service at all times was not satisfied.

██ For the reasons stated in the immediately preceding paragraph, the appellant was not deprived of property without due process of law. He did not fully earn the pension because the appellant did not comply with the condition of honorable service at all times. Consequently there was no substantive due process violation. The appellant does not contend that the Act's notice and hearing provisions violate procedural due process.

██ The appellant's forfeiture of estate argument is unsound. The forfeiture of estate provision of the State *Constitution, W.Va. Const.* art. III, § 18, *see supra* note 9, applies only when the entire estate, not merely one asset, is forfeited. *People v. Milton*, 732 P.2d 1199, 1205–06 (Colo. 1987) (en banc); *Ballard v. Board of Trustees*, 263 Ind. 79, 85–86, 324 N.E.2d 813, 817 (involving public pension), *appeal dismissed for want of substantial federal question*, 423 U.S. 806, 96 S.Ct. 15, 46 L.Ed.2d 27 (1975).

There are a few cases from other jurisdictions which have invalidated public pension forfeitures based upon forfeiture of estate or contract impairment provisions of the respective state constitutions. See *Board of Trustees v. Weed*, 719 P.2d 1276 (Okla.1986) (forfeiture of estate); *Commonwealth ex rel. Zimmerman v. Officers & Employees Retirement Board*, 501 Pa. 293, 461 A.2d 593 (1983) (3–2 opinion) (impairment of contract; rejecting implied common-law duty of faithfulness), *reaff'd on reh'g*, 503 Pa. 219, 469 A.2d 141 (1983) (same);[11] *Leonard v. City of Seattle*, 81 Wash.2d 479, 503 P.2d 741 (1972) (en banc) (forfeiture of estate). These cases are inapposite. In the Oklahoma and Washington cases the *offenses were committed after retirement* and, thus, were *unrelated* to the public service. "The key distinguishing fact among the jurisdictions which have addressed this issue is whether the felony conviction [was based upon] misconduct [which] occurred while the employee was still actively fulfilling pension eligibility requirements[, including honorable public service at all times,] or[, instead,] after pension benefits were [fully] vested[,]" by, *inter alia*, honorable service throughout the public service. *Weed*, 719 P.2d at 1277. "Our present [Oklahoma] pension forfeiture statute does not contain the language [as in the statutes of West Virginia and Illinois, see *Kerner*,] requiring the conviction to relate back to the time of service in order for the statute to have effect." *Id.*

11. Chief Justice Roberts, in his dissenting opinions to both opinions in *Zimmerman,* joined in dissent by one other justice, cited authority for the proposition that Pennsylvania *has* recognized an implied common-law duty of faithful public service as a condition to receiving public retirement plan benefits. He also made these insightful comments, which are valid under the Act in our jurisdiction and under the common law on point in West Virginia:

Whatever may be the merits of a rigid 'contract' theory of retirement benefits as applied to amounts of compensation and to technical conditions of eligibility, this theory clearly has no legitimate application to the condition of faithful service. What reasonable expectation could possibly be defeated by the Legislature's explicit recognition of the principle— long embodied in the common law and obvious to common decency and common sense—

that an employee who uses his office to defraud the people whom he serves will not receive retirement benefits paid for by the people whom he has defrauded? Where is the unfairness, where is the unreasonable impairment of contract, in the Legislature's giving notice to potential wrongdoers that their *future* abuses of the public trust will deprive them of a pension?

*Zimmerman,* 501 Pa. at 305–306, 461 A.2d at 599–600 (emphasis in original). While we are aware of the financial hardships which a forfeiture of public retirement plan benefits may cause, we agree with the above quoted comments that the forfeiture of such benefits for less than honorable public service is not unfair, especially in light of the manifest distinction between public and private pensions, namely, the "public trust" condition precedent to earning a public pension.

at 1278. Similarly, a federal appeals court has emphasized that the Washington case, *Leonard,* held that a public "pension—once vested—is not forfeited upon the retiree's conviction of a felony unrelated to work performance or contribution to the pension fund." *Knudson v. City of Ellensburg,* 832 F.2d 1142, 1146 (9th Cir.1987). The problem presented in *Weed* and *Leonard* simply would not arise in the State of West Virginia because our statute expressly limits forfeiture to proscribed misconduct occurring during the public service.

The Pennsylvania precedent, *Zimmerman,* is not applicable authority here because the Pennsylvania public pension forfeiture statute involved in that case was expressly retroactive, so that it would purportedly apply to offenses committed prior to the effective date of the statute. In contrast, the Act in the present case expressly applies only to future conduct. *See supra* note 1.

■ The appellant finally argues that this Court should invalidate the Act because it allegedly conflicts with the policy or spirit of federal legislation which requires vested private pension rights to be nonforfeitable regardless of misconduct by the employee. We believe this argument is untenable.

The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provides, in 29 *U.S.C.* § 1053(a) (1988), that an employee's right to a normal retirement benefit is nonforfeitable, once vested based upon retirement age and certain years of service. One of the principal reasons for ERISA's nonforfeitability provisions was to prevent the enforcement of so-called "bad boy" clauses that denied employees their pension benefits if they were discharged for various types of misconduct, such as dishonesty, excessive absenteeism, insubordination, etc. 60A Am.Jur.2d *Pensions and Retirement Funds* § 508 (1988). However, government pension plans are exempt from complying with ERISA's labor law provisions, including the nonforfeitability provisions of 29 *U.S.C.* § 1053(a) (1988). *See* 29 *U.S.C.* § 1003(b)(1) (1988). A "government plan" is defined to include

a plan established or maintained for its employees by the federal government or by a state government or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. 29 *U.S.C.* § 1002(32) (1988). This definition obviously includes the West Virginia Public Employees Retirement System.

The legislative history to ERISA unmistakably shows that congress was concerned only with private pension plans. *See, e.g.,* H.R.Report No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Adm. News* 4639, 4639 (ERISA designed to remedy certain defects in private retirement system); *id.* at 4640 (private pension system is a relatively modern economic institution); *id.* at 4643 (one of the major private pension plan considerations centers around concept of vesting). In addition, the enactment of public pension forfeiture legislation by the states after ERISA belies the notion that ERISA's nonforfeitability rule applies to public, as well as to, private, pensions. *See, e.g., Cal.Gov't Code* § 75033.2 (West Supp.1990) (forfeiture of judicial retirement benefits for conviction of felony involving moral turpitude or which was committed in course and scope of performing judge's duties; added in 1988). Simply put, public pensions, unlike private-sector pensions, are premised in part upon faithful service of the public trust; therefore, a breach of that trust leads to a forfeiture of a public pension.

For the foregoing reasons, this Court holds that the Act on the "Disqualification for Public Retirement Plan Benefits," *W.Va.Code,* 5–10A–1 to 5–10A–10 [1976], is not unconstitutional as cruel and unusual, or disproportionate, punishment (*W.Va. Const.* art. III, § 5), as a bill of attainder or bill of pain and penalties or an *ex post facto* law (*W.Va. Const.* art. III, § 4), as an impairment of contract (*W.Va. Const.* art. III, § 4), as a deprivation of property without due process of law (*W.Va. Const.* art. III, § 10) or as a forfeiture of estate (*W.Va. Const.* art. III, § 18). Furthermore, that Act is exempt, under 29 *U.S.C.* § 1003(b)(1) (1988), from the section of the Employee Retirement Income Security Act

of 1974, as amended, on nonforfeitability of a normal retirement benefit, 29 *U.S.C.* § 1053(a) (1988).

## III

Based upon all of the above, the final order of the circuit court determining that the appellant's public service was "less than honorable," as defined in *W.Va.Code*, 5–10A–2(e) [1976], is affirmed.

Affirmed.

NEELY, Chief Justice, dissenting:

I find that the statute upheld today confounds constitutional notions of proportionality because it imposes a penalty with no regard to the character and degree of the offence committed. There is only one penalty, forfeiture of the entire pension. The severity of the penalty perversely increases in proportion to time the employee has worked for the State, rather than in proportion to the transgressor's culpability. In practical effect, then, the State exacts a far higher penalty from someone who has worked for the State for thirty-two years and can no longer rearrange his life in old age, than it does from a young person who has worked only five years and can more easily bear the penalty.

The concept of disproportionality is explicitly recognized in *W. Va. Const.*, art. III, § 5, "Penalties shall be proportioned to the character and degree of the offence." The same Constitutional provision contains prohibitions against excessive bail, excessive fines, cruel and unusual punishment, banishment, double jeopardy, and compulsory self-incrimination. These are among the most important of human rights. In *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977), we applied *W.Va. Const.*, art. III, § 5 to a penal scheme concerning juveniles and said, "[a] good starting point for applying the cruel and unusual punishment standard ... is the concept of disproportionality." 160 W.Va. at 190–91, 233 S.E.2d at 330.

Disproportional punishment was one of the most powerful criticisms leveled against the otherwise exemplary British legal system of the eighteenth century, when there were over 200 crimes punishable by death. With the Eighth Amendment to the *Constitution of the United States,* our Founding Fathers demonstrated that their concern with disproportionality extended to fines as well as physical punishments, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." When the drafters of the West Virginia *Constitution* mandated that "penalties shall be proportioned to the character and degree of the offence", they expressed a principle that is legally binding on the legislature when it enacts statutory penalties.

If a state employee in his fifth year of employment is convicted of extortion and embezzlement, he loses his pension. Another employee, who has dedicated thirty years of his life to honorable State employment but takes one bribe, suffers a penalty six times greater. Yet we do not punish petty larceny the same as armed robbery. We do not punish indecent exposure the same as aggravated rape. I do not doubt that the majority would strike down any statute that set a mandatory sentence for petty larceny equal to the mandatory sentence for armed robbery. Why then do we allow this statute to stand? I do not reach the issue of whether the statute as applied in this particular case works an intolerable injustice. Under a constitutional statute, that would be an issue to be addressed at an evidentiary hearing where appropriate penal principles would be applied.

Some may argue that *W. Va. Const.*, art. III, § 5, was meant to apply only to punishment meted out by the criminal justice system. I cannot construe the constitutional provision so narrowly. The State discusses two New Jersey cases involving termination of a public employee's pension, *Uricoli v. Board of Trustees*, 91 N.J. 62, 449 A.2d 1267 (1982), and *Eyers v. State of New Jersey*, 91 N.J. 51, 449 A.2d 1261 (1982), and admits in its brief that these cases stand for the proposition that a forfeiture statute is penal in nature and must be strictly construed. When the State takes away accrued pension rights with the goal of keeping its employees on the

straight and narrow, it is performing the same function as our criminal justice system.

Unlike a criminal trial, however, the procedure whereby the State takes away pension benefits allows no opportunity for mitigating factors to lessen the penalty. Yet, in *Comm. on Legal Ethics v. Boettner*, 183 W.Va. 136, 394 S.E.2d 735 (1990), this Court held that a license to practice law could not be withdrawn without due process, and that due process required that an attorney, already criminally convicted, must be given the right to an evidentiary hearing at which he could introduce mitigating factors that might bear on the State Bar sanction to be imposed. If we believe that it is unfair to deprive a lawyer of his license without an opportunity to present mitigating factors to lessen the penalty, how can we not be bothered by a statute that works an equal injustice?

Some may argue that when the State takes away pension rights, it is not taking away a property interest belonging to the employee. Such an argument is utterly wrong, at least in light of this Court's decision in *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988). In *Dadisman v. Moore*, we firmly established that accrued pension rights are a property interest of the employee. Syl. pt. 4 states:

"When a public employee renders services he earns the employers' matching contribution to the retirement trust fund, and his contributions and these earned employer contributions, plus the accrued interest from both, constitute the corpus of the pension trust, and the retirement entitlements earned are deferred compensation for these public employees."

Thus, when the State takes away a pension, it takes away the employee's rights in property, yet the amount that it takes has no relation to the character and degree of the offence, but rather is determined by how many years the employee has worked to earn the pension.

It is, however, possible to imagine a less objectionable application of the challenged statute. If an employee began working for the State after the enactment of the statute on 13 March 1976, then the statute could be seen as part of his employment agreement. Because the 1976 statute specifically states that honorable service is a condition to receiving any pension, we could reconcile this statute with *Dadisman v. Moore*, but only with regard to those employees who began working for the State after 13 March 1976. However, we cannot apply the new condition on pension benefits to rights accrued before 13 March 1976. In other words, the State could not, in 1976, unilaterally alter employment agreements that it entered into as early as 1961, when the Public Employees Retirement System was started.

The legislature may have sensed that taking away pension benefits accrued before the passage of *W.Va.Code*, 5–10A–9 [1976] would be wrong, because as part of its 1976 act it included a rule of construction intended as a saving provision.[1] The saving provision provided that if a court found the act to deprive a person of a property right already vested and indefeasible as of 13 March 1976, the act would still apply to pension benefits vesting after the date of enactment. *W.Va.Code*, 5–10A–9 [1976]. In light of *Dadisman v. Moore*, this Court should protect all pension benefits accrued as of 13 March 1976.

In 1961, when the Public Employees Retirement System (PERS) was first established, Mr. Dodd and many others entered into a contract with the State, whereby they would work and make payments to-

---

**1.** *W.Va.Code*, § 5–10A–9 states:

If any provision of this article is determined to deprive a person of any property right which is vested and is indefeasible as of the effective date of this article [March 13, 1976], the provisions of this article shall nonetheless be effective as to any benefits or a part of any benefit under a retirement plan which shall be deemed to vest on or after the effective date of this article; and the right to receive any benefit under a retirement plan, which right shall vest on or after the effective date of this article, is hereby conditioned upon the full compliance and observance of the provisions hereof and the rendering of honorable service throughout the service in public employment or public office in respect of which such benefit is payable.

ward a pension, and, in return, the State agreed to pay them a pension upon retirement. The State notes that in 1963, the legislature enacted *W.Va.Code,* § 5–10–49 [1963], quoted at footnote number five of the Court's opinion, whereby the state would take the pension away from a "public official" who was removed from office on account of dishonorable conduct involving his office. However, the provision applied only to public officials, not to the rank and file. After the 1963 enactment, many state employees continued to work with the understanding that part of their pay was in the form of a pension, never suspecting that the pensions they were earning then would be in jeopardy someday. Many never dreamed that they would rise to the level of officials, nor that if they became officials they would ever commit a dishonorable act that would forfeit their pensions. Certainly, few imagined that someday a statute would be enacted that would take away all of their accrued pension for one bad act late in their careers.

In 1976, the legislature, in a fit of righteous indignation, decided to stamp out corruption among all state employees with the March 13th Act. However noble its end, the means it chose violate our State Constitution's requirement of proportional penalties, and the Court makes a serious error when it allows the statute to stand.